## THE OSCEOLA.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 98. Argued December 2, 1902.—Decided March 2, 1903.

1. The law both in England and America is settled as to the following propositions:
   (1) That a vessel and her owners are liable, in case a seaman falls sick or is wounded in the service of the ship, to the extent of his mainte-nance and cure, and to his wages, at least so long as the voyage is continued.
   (2) That the vessel and her owners are, both by English and American law, liable to an indemnity for injuries received by seamen in con-sequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to such ship.
   (3) That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot re-cover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.
   (4.) That the seaman is not allowed to recover an indemnity for the neg-ligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received from negligence or accident.
2. Section 3348, Rev. Stat. of 1898 of Wisconsin, providing that every ship, boat or vessel used in navigating the waters of that State shall be liable for all damages arising from injuries done to persons or property thereby, and that the claim therefor shall constitute a lien upon such ship, boat or vessel, is confined to cases where the damage is done by those in charge of a ship, with the ship as the "offending thing." Cases of damages done *on board* the ship are not, within the meaning of the act, damages done *by the ship*. Such statute does not create a lien which can be en-

forced *in rem* for injuries received by a seaman by the falling of a gangway, resulting as alleged from the master negligently ordering the same to be hoisted while a head wind was blowing.

THIS was a libel *in rem* filed in the District Court for the Eastern District of Wisconsin, in admiralty, against the propeller Osceola, to recover damages for a personal injury sustained by one Patrick Shea, a seaman on board the vessel, through the negligence of the master.

The case resulted in a decree for the libellant, from which an appeal was taken by the owners to the Circuit Court of Appeals, which certified to this court certain questions arising upon the following statement of facts :

" The owners had supplied the vessel with a movable derrick for the purpose of raising the gangways of the vessel when in port, in order to discharge cargo. The appliance was in every respect fit and suitable for the purpose for which it was intended and furnished to be used, and at the time of the injury was in good repair and condition. The gangways which were to be raised by the derrick were each about ten feet long lengthwise of the ship, about seven feet high and weighed about 1050 pounds. In the month of December, 1896, the vessel was on a voyage bound for the port of Milwaukee, and when within three miles of that port, and while in the open lake, the master of the vessel ordered the forward port gangway to be hoisted by means of the derrick, in order that the vessel might be ready to discharge cargo immediately upon arrival at her dock. At this time the vessel was proceeding at the rate of eleven miles an hour against a head wind of eight miles an hour. Under the supervision of the mate, the crew, including the appellee Patrick Shea, who was one of the crew, proceeded to execute the order of the master. The derrick was set in place to raise the gangway. As soon as the gangway was swung clear of the vessel, the front end was caught by the wind and turned outward broadside to the wind, and by the force of the wind was pushed aft and pulled the derrick over, which in falling struck and injured the libellant. The negligence, if any there was, consisted solely in the order of the master that the derrick should be used and that the gangway

should be hoisted while the vessel was yet in the open sea when the operation might be impeded and interfered with by the wind. The mate and the crew in executing the orders of the master of the vessel acted in all respects properly, and were guilty of no negligence in the performance of the work. The libel charged negligence upon the owners of the vessel in ' requiring and permitting the work of unshipping said gangway to be done while the said vessel was at sea and running against the wind.' The owners were not present upon the vessel, nor was the master a part owner of the vessel. It is contended that the vessel and its owners are liable for every improvident or negligent order of the captain in the course of the navigation or management of the vessel."

The questions of law upon which that court desired the advice and instruction of the Supreme Court are—

" First. Whether the vessel is responsible for injuries happening to one of the crew by reason of an improvident and negligent order of the master in respect of the navigation and management of the vessel.

" Second. Whether in the navigation and management of a vessel, the master of the vessel and the crew are fellow servants.

" Third. Whether as a matter of law the vessel or its owners are liable to the appellee, Patrick Shea, who was one of the crew of the vessel, for the injury sustained by him by reason of the improvident and negligent order of the master of the vessel in ordering and directing the hoisting of the gangway at the time and under the circumstances declared ; that is to say, on the assumption that the order so made was improvident and negligent.".

Mr. C. H. Van Alstine for appellants.

A proceeding *in rem* in the admiralty, is a proceeding to give effect to a maritime lien and such a lien must always exist to form the basis of such a proceeding. *Beane* v. *The Mayurka*, 2 Curt. 72 ; *The Rock Island Bridge*, 6 Wall. 213 ; *The Corsair*, 145 U. S. 335, 347 ; *The Yankee Blade*, 19 How. 82, 89 ; *The Glide*, 167 U. S. 606, 612.

The maritime lien then is but an incident, a security, and does

not exist in favor of one to whom the owner of the vessel is not liable *in personam* founded upon some maritime contract or tort connected with the vessel.

It necessarily follows that the vessel is not responsible unless appellants are liable *in personam* to appellee under some law, maritime or state, for the damages caused by the negligent order of the master, and such law gave him a lien upon the vessel as security for the payment of his damages.

The maritime law is only so far operative as law in any country as it is adopted by the laws and usages of that country. *The Lottawanna*, 21 Wall. 558. See the Laws of Oleron relating to seamen, Art. 6; Appendix to 30 Fed. Cas. p. 1174; the Laws of Wisbuy, Art. 18; Appendix to 30 Fed. Cas. p. 1191; the Laws of Hanse Towns, Art. 39; Appendix to 30 Fed. Cas. p. 1200; the Marine Ordinances of Louis XIV, sections 11 and 12, title Fourth; Appendix to 30 Fed. Cas. p. 1209.

The substance of these laws, to the effect that if a seaman be wounded in the service of the ship or fall sick during the voyage, he shall be paid his wages and cured at the charge of the ship, has been adopted in this country, *The Alexandria*, 17 Fed. Rep. 390, but these laws are insufficient to give appellee a lien upon the vessel for damages based on mental and physical pain and loss of earning capacity.

The court cannot make the law, it can only declare it. If, within its proper scope, any change is desired in its rules, other than those of procedure, it must be made by the legislative department. *The Lottawanna*, 21 Wall. 576.

As the maritime law of this country is silent in respect to the claim made in the libel, and as the case must be decided according to law, it is evident that the court must—if it has the right so to do—apply the municipal law, for as we have already seen it cannot extend the maritime law beyond its established limits. As, however, the appellee resorted to a libel *in rem*, the court is bound by the maritime law. *Homer Ramsdell Trans. Co.* v. *La Compagnie Gen. Trans.*, 182 U. S. 406; *The City of Norwalk*, 55 Fed. Rep. 107.

By the maritime law of this country the liability of the ves-

sel owner, in cases like the present, is limited to medical and surgical attendance, and wages to the end of the voyage.

While there are some reported cases in admiralty, holding that a seaman injured in the service of the ship by the negligence of the master, has a cause of action to recover damages from the owner for such personal injury; there is no reported case holding that he has a lien upon the vessel, and the cases holding the owner liable *in personam* are rested on the common law, as that law was understood by the courts deciding them.

Prior to the decision of *Ross* v. *Railway Company*, 112 U. S. 377, decided December 8, 1884, and overruled in *Railway Company* v. *Conroy*, 175 U. S. 323, there is no reported case in the Federal courts of a suit by a seaman against a vessel, or its owners, to recover damages for a personal injury caused by the negligence of the master in the navigation or management of the vessel, excepting *Daub* v. *Railway Company*, 18 Fed. Rep. 625. As to fellow servant relations, see *The Titan & The Hills*, 23 Fed. Rep. 313; *The A. Heaton*, 43 Fed. Rep. 592; *The Sachen*, 42 Fed. Rep. 66; *McCullough's Adm.* v. *N. Y., etc., Steamboat Co.*, 20 U. S. App. 570; *Quin* v. *Lighterage Co.*, 23 Fed. Rep. 363; *Olsen* v. *Navigation Co.*, 44 C. C. A. 51, which were cases decided according to the common law. See also *Quebec Steamship Co.* v. *Merchant*, 133 U. S. 375; *Homer Ramsdell Co.* v. *La Compagnie Gen. Trans., supra; Railway Co.* v. *Conroy*, 175 U. S. 323; *Hedley* v. *S. S. Co.*, 1 L. R. Q. B. 58; *Kalleck* v. *Deering*, 161 Massachusetts, 469; *Gabrielson* v. *Waydell*, 135 N. Y. 1.

As the suit at bar is *in rem*, it must be decided under the maritime law and under that law the liability of the owner of a vessel in cases like the present is limited to medical and surgical attendance and wages to the end of the voyage. But if the court has the right to apply to this case any part of the municipal law, sound reason and natural justice requires only that the owner of the vessel shall be bound to use reasonable care to furnish a seaworthy vessel, sufficient and safe appliances, and sufficient and competent seamen and officers, and that the law of assumption of risk should be applied to the seamen.

The master of a vessel, it is true, is vested with considerable

power over the seamen, but he has not the power exercised by masters under ancient maritime law. He has, however, power to compel obedience by the seamen to his orders issued in the navigation and management of the vessel, by forfeiture of wages and imprisonment. Rev. Stat. sec. 4596. But whatever power the master has, he is invested with it *by the maritime law*, not by the owner of the vessel.

The most reasonable and proper construction of the Wisconsin statute makes it apply to cases where the ship itself, and not one of its appliances, directly produces the damage as the last link in the chain of events commencing with negligence or misconduct in the navigation of the vessel as the first or proximate cause, and it is submitted that such is the construction due to this statute.

The Federal courts enforce liens, created by state statutes, upon vessels, when such statutes are not in conflict with the laws and usages of the United States, because, and only because, the lien touches a subject within the constitutional jurisdiction of the Federal courts, and it necessarily follows that they cannot go beyond the state or municipal law creating the cause of action and lien. *Bigelow* v. *Anderson's Adm.*, 34 U. S. App. 261, 273; *The City of Norwalk*, 55 Fed. Rep. 98; *Sherlock* v. *Alling*, 93 U. S. 104; *The Corsair*, 145 U. S. 347. Where a cause of action depends upon general law, the Federal courts are not bound by the state decisions. *Baltimore & Ohio R. R. Co.* v. *Baugh*, 149 U. S. 368, 370.

By the common law of Wisconsin the master is not liable to his servant for a personal injury caused by the negligence of a fellow servant, and whether the relation of fellow servants exists, in a given case, is not to be determined by the rank or grade of the offending servant, but by the nature of the act in the performance of which the injury was inflicted, without regard to the rank of the offending servant. If the negligence of the servant causing the injury was in respect to an act that the law implies a contract duty on the part of the master to perform, and the offending servant has been charged by the master with the performance of that act, then such servant is an agent of the master, but as to all other acts he is a fellow serv-

ant of the servant injured. *Dwyer* v. *Am. Ex. Co.*, 82 Wisconsin, 307; *Stutz* v. *Armour*, 84 Wisconsin, 623; *Cadden* v. *Am. Steel Barge Co.*, 88 Wisconsin, 409; *Hartford* v. *Railway Co.*, 91 Wisconsin, 374; *Klochinski* v. *Shores Lumber Co.*, 93 Wisconsin, 417; *McMahon* v. *Ida Mining Co.*, 95 Wisconsin, 308; *Albrecht* v. *Railway Co.*, 108 Wisconsin, 530, 538; *Wiskie* v. *The Montello Granite Co.*, 111 Wisconsin, 443, and cases cited.

The rule in Wisconsin is that all servants charged by the master with the duty of furnishing another servant with a place to work, or with appliances to work with, or with fellow servants, is an agent of the master for those purposes, but in every other case all servants of a common master, engaged in the same general undertaking, are fellow servants. None of the Wisconsin cases cited involve maritime torts; there are, however, two such cases closely, at least, analogous in their facts, in which different conclusions were reached. See *Matthews* v. *Case*, 61 Wisconsin, 491; *Thompson* v. *Herman*, 47 Wisconsin, 602.

*Mr. John H. Roemer* for appellee.

As this case is *in rem* unless a lien exists by virtue of the statute of Wisconsin or by the maritime law, or unless appellants have waived the objection by appearing personally, giving an undertaking for the release of the vessel and litigating upon the merits, the action cannot be maintained.

The sovereignty of the State of Wisconsin extends to the center of Lake Michigan, and its laws so far as they do not conflict with the laws of the United States passed in the regulation of commerce and navigation, are operative within the boundaries of that State.

If a state statute gives a right of action touching a subject of maritime nature, the admiralty can administer the law by a proceeding *in rem*, if the statute grants a lien, or *in personam*, no lien being granted. *The Corsair*, 145 U. S. 335; *Bigelow* v. *Nickerson*, 70 Fed. Rep. 113.

Sec. 3348, Wisconsin Statutes of 1898, provides that for all damages arising from injuries done to persons or property by such ship, boat or vessel, a lien is given which may be enforced by proceeding in admiralty, etc.

Whether this statute creates any new cause of action or merely deals with causes already maintainable at common law or in admiralty has never yet been determined by judicial construction.

If the statute merely applies to causes *in personam* already maintainable under the statute, the common, or the maritime law, it is effective to create liens in all cases within its scope, and such liens may be enforced by proceeding *in rem* in admiralty. *Mendell* v. *The Martin White*, Hoff. Op. 450; Case No. 9419 Fed. Cases; *The J. E. Rumbell*, 148 U. S. 1; *The Oregon*, 45 Fed. Rep. 62; *The Oregon*, 158 U. S. 186; *The J. F. Warner*, 22 Fed. Rep. 342.

The subjects of admiralty jurisdiction include "all affairs relating to mariners, whether ship officers or common mariners, their rights and privileges respectively; their office and duty; their wages; their offences, whether by wilfulness, casualty, ignorance, negligence or insufficiency, with their punishments." *Chamberlain* v. *Chandler*, 3 Mason, 242. The rule of the English courts that unless the owner is liable at common law the vessel cannot be held in admiralty, has been rejected in this country. *Homer Ramsdell Transportation Co.* v. *La Compagnie Générale Transatlantique*, 182 U. S. 406.

As to jurisdiction in cases of marine torts, see *The Mariana Flora*, 11 Wheat. 54; *The Palmyra*, 12 Wheat. 1; *The Explorer*, 20 Fed. Rep. 135; *The Wanderer*, 20 Fed. Rep. 140; *The Max Morris*, 24 Fed. Rep. 860; *The Max Morris*, 28 Fed. Rep. 881; *Steamer Max Morris* v. *Curry*, 137 U. S. 1.

If it should be determined that the proceeding should have been commenced *in personam* and not *in rem*, the question cannot be raised at this time. Betts, Adm. Pr. 99; *The Zenobia*, 1 Abb. Adm. 48; *Roberts* v. *Huntsville*, 3 Woods, 386; *The Union*, 4 Blatchf. 90; *The White Squall*, 4 Blatchf. 103; *The Monte A.*, 12 Fed. Rep. 331; *The Williamette*, 70 Fed. Rep. 874; *Leathers* v. *Blessing*, 105 U. S. 626; *Chamberlain* v. *Ward*, 21 How. 554; *The Charles Morgan*, 115 U. S. 69; 2 Brown's Civil & Adm. Law, p. 400; *The Warren*, 2 Ben. 498; *The Bilboa*, Lush. 149.

There is a conflict of opinion as to whether or not the vessel

and its owners are liable in admiralty for the negligence of the master in the management and navigation of the ship, proximately causing injury to an ordinary seaman; that the vessel and its owners are responsible in such cases is supported by the better reasoning. *Peterson* v. *The Chandos*, 4 Fed. Rep. 645; *The Clatsop Chief*, 8 Fed. Rep. 163; *The Titan*, 23 Fed. Rep. 413; *The A. Heaton*, 43 Fed. Rep. 592, and cases cited; *The Julia Fowler*, 49 Fed. Rep. 277; *The Frank and Willie*, 45 Fed. Rep. 494; *McCullough's Admx.* v. *Steamboat Co.*, 20 U. S. App. 570; 61 Fed. Rep. 364; *Chicago, M. & St. P. R. Co.* v. *Ross*, 112 U. S. 377; *Leathers* v. *Blessing*, 105 U. S. 626; *The St. Lawrence*, 7 Notes, Cas. Adm. & Ecc. 556, 566; 14 Jur. 534; *Keating* v. *Pac. St. Whaling Co.*, 21 Washington, 415; *The Miami*, 93 Fed. Rep. 218; *Oleson* v. *Oregon, C. & N. Co.*, 104 Fed. Rep. 574.

Passengers have often maintained libels, as well against the ship carrying them as against other ships, for personal injuries caused by negligence for which the owners of the ship libelled were responsible. *The New World*, 16 How. 469; *The Washington*, 9 Wall. 513; *The Juniata*, 93 U. S. 337; *The City of Panama*, 101 U. S. 453, 462. The sixteenth rule in admiralty, which directs that " in all suits for an assault or beating upon the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be *in personam* only," does not affect libels for negligence. *Leddy* v. *Gibson*, 11 Ct. Sess. Cas. (3d ser.) 304, distinguished. No reason can be assigned why the owners of a vessel should be held less liable to a seaman for the negligence of the master in a court of admiralty than in a court of common law. Courts of admiralty have always considered seamen as peculiarly entitled to their protection. Seamen may recover their wages by libel *in personam* against either the owners or the master, or by libel *in rem* against the ship. *Sheppard* v. *Taylor*, 5 Pet. 675, 711; *Bronde* v. *Haven*, Gilp. 592; *Temple* v. *Turner*, 123 Massachusetts, 125, 128; Rule 13 in Admiralty. Their lien on the ship or its proceeds takes precedence of all other claims, except, perhaps, claims for salvage, or for damages by collision owing to the fault of their ship. Hen. Adm. sec. 69, and cases cited; *Norwich Co.* v. *Wright*, 13 Wall.

104, 122. A seaman, taken sick or injured or disabled in the service of the ship, has the right to receive his wages to the end of the voyage, and to be cured at the ship's expense. *Harden* v. *Gordon*, 2 Mason, 541; *The George*, 1 Sumner, 151; *Reed* v. *Canfield*, 1 Sumner, 195; *Sherwood* v. *Hall*, 3 Sumner, 127.

The cases relied upon by claimants, that the master of the vessel and the appellee were fellow servants, are common law cases and can be distinguished from this. *Gabrielson* v. *Waydell*, 135 N. W. 1; *Hedley* v. *Pinkney & Sons S. S. Co.*, 1 L. R. Q. B. 58; *Kelleck* v. *Deering*, 161 Massachusetts, 469; *Matthews* v. *Case*, 61 Wisconsin, 491, distinguished and see the only case in which the precise point in question has been squarely raised and decided, *Thompson* v. *Hermann*, 47 Wisconsin, 602, and numerous cases cited. See also *Railway Co.* v. *Conroy*, 175 U. S. 323; *Union Pacific Ry. Co.* v. *Fort*, 17 Wall. 553; *Railway Co.* v. *Ross*, 112 U. S. 377.

But to the general rule there are certain well defined exceptions, recognized by both state and Federal courts, some of which are applicable to the case at bar. Where a master abdicates from control and management of his business, and puts the whole power of superintendence into other hands, he necessarily has one or more vice principals. Any person to whom is committed under such circumstances the entire control of all the servants, including the power to hire and discharge, is a vice principal for whose negligence in the matter of the control of the servants, and the management of the business, the master is liable to the servants. Sherman & Redfield on Negligence (5th ed.), secs. 230, 233, and cases cited; *Railway Co.* v. *Ross*, 112 U. S. 377; *Railway Co.* v. *Baugh*, 149 U. S. 364; *Railway Co.* v. *Peterson*, 162 U. S. 347; *Railway Co.* v. *Keegan*, 160 U. S. 259; *Railway Co* v. *Conroy*, 175 U. S. 323; *Crispin* v. *Babbitt*, 81 N. Y. 516; 20 Am. & Eng. Ency. of Law, 147; *Johnson* v. *First National Bank*, 79 Wisconsin, 414.

See the following cases as to fellow servants or vice principal: *Harrison* v. *Railroad Co.*, 77 Michigan, 409; *Malcolm* v. *Fuller*, 152 Massachusetts, 428; *Carlson* v. *N. W. Telephone Exchange Co.*, 63 Minnesota, 428; *Tailor* v. *Railway Co.*, 121 In-

diana, 124; *Railway Co.* v. *May*, 108 Illinois, 288 ; *Gormley* v. *Vulcan Iron Works*, 61 Missouri, 492; *Smith* v. *Wabash Railway Co.*, 92 Missouri, 366; *Schroeder* v. *Railway Co.*, 108 Missouri, 322; *Lasky* v. *Railway Co.*, 83 Maine, 461; *Patton* v. *Railway Co.*, 96 North Carolina, 455; *McGovern* v. *Railway Co.*, 123 New York, 281; *Eldredge* v. *Steamship Co.*, 134 New York, 187; *Railroad Co.* v. *Fort*, 17 Wallace, 553; *Borgman* v. *Railway Co.*, 41 Fed. Rep. 667; *Thompson* v. *Railway Co*, 14 Fed. Rep. 564.

The analogies of the general rule of the municipal law exempting the master from liability for injury to a servant caused by the negligence of a fellow servant, do not apply to the master of a vessel and ordinary seamen when the vessel is at sea.

One of the purposes for which the master is employed is to exercise authority and control over the crew in the management and navigation of the ship ; in the exercise of that authority and control he is the representative of the owners and not the fellow servant of the crew.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

In the view we take of this case we find it necessary to express an opinion only upon the first and third questions, which are in substance whether the vessel was liable *in rem* to one of the crew by reason of the improvident and negligent order of the master in directing the hoisting of the gangway for the discharge of cargo, before the arrival of the vessel at her dock, and during a heavy wind.   As this is a libel *in rem* it is unnecessary to determine whether the owners would be liable to an action *in personam,* either in admiralty or at common law, although cases upon this subject are not wholly irrelevant.

1. If the rulings of the District Court were correct, that the vessel was liable *in rem* for these injuries, such liability must be founded either upon the general admiralty law or upon a local statute of the State within which the accident occurred. As the admiralty law upon the subject must be gathered from the accepted practice of courts of admiralty, both at home and abroad, we are bound in answering this question to examine

the sources of this law and its administration in the courts of civilized countries, and to apply it, so far as it is consonant with our own usages and principles, or, as Mr. Justice Bradley observed in *The Lottawanna*, 21 Wall. 558, " having regard to our own legal history, Constitution, legislation, usages, and adjudications."

By Article VI of the Rules of Oleron, sailors injured by their own misconduct could only be cured at their own expense, and might be discharged ; " but if, by the master's order and commands, any of the ship's company be in the service of the ship, and thereby happen to be wounded or otherwise hurt, in that case they shall be cured and provided for at the cost and charges of the said ship." By Article 18 of the Laws of Wisbuy, " a mariner being ashore in the master's or the ship's service, if he should happen to be wounded, he shall be maintained and cured at the charge of the ship," with a further provision that, if he be injured by his own recklessness, he may be discharged and obliged to refund what he has received. Practically the same provision is found in Article 39 of the Laws of the Hanse Towns ; in the Marine Ordinances of Louis XIV, Book III, Title 4, Article 11 ; and in a Treatise upon the Sea Laws, published in 2 Pet. Admiralty Decisions. In neither of these ancient codes does there appear to be any distinction between injuries received accidentally or by negligence, nor does it appear that the seaman is to be indemnified beyond his wages and the expenses of his maintenance and cure. We are also left in the dark as to whether the seaman in such a case has recourse to the ship herself or is remitted to an action against the owners.

By the modern French Commercial Code, Art. 262, " seamen are to be paid their wages, and receive medical treatment at the expense of the ship, if they fall sick during a voyage, or be injured in the service of the vessel." Commenting upon this article, Goirand says in his commentaries upon the French Code, that " when a sailor falls ill before the sailing of the vessel, he has no right to his wages ; if he becomes ill during the voyage, and from no fault of his own, he is paid his wages, and tended at the expense of the ship, and if he is left on shore, the ship is also liable for the expense of his return home ; " and

under Article 263 "the same treatment is accorded to sailors wounded or injured in the service of the ship. The expenses of treatment and dressing are chargeable to the ship alone, or to the ship and cargo, according to whether the wounds or injuries were received in the service of the ship alone, or that of the ship and cargo."

Similar provisions are found in the Italian Code, Article 363 : the Belgian, Article 262 ; the Dutch, Articles 423 and 424 ; the Brazilian, Article 560 ; the Chilian, Article 944 ; the Argentine, Article 1174 ; the Portuguese, Article 1469 ; the Spanish, Articles 718 and 719 ; the German, Articles 548 and 549. In some of these codes, notably the Portuguese, Argentine and Dutch, these expenses are made a charge upon the ship and her cargo and freight, and considered as a subject of general average. By the Argentine Code, Article 1174, the sailor is also entitled to an indemnity beyond his wages and cure in case of mutilation ; and by the German Code he appears to be entitled to an indemnity in all cases for injuries incurred in defence of his ship ; and by the Dutch Code, the sailor, if disabled, is entitled to such damages as the judge shall deem equitable. In all of them there is a provision against liability in case of injuries received by the sailor's willful misconduct.

Except as above indicated, in a few countries, the expense of maintenance and cure do not seem to constitute a privilege or lien upon a ship, since by the French Code, Article 191, classifying privileged debts against vessels, no mention is made of a lien for personal injury. The other Continental and South American codes do not differ materially from the French in this particular. Probably, however, the expenses of maintenance and cure would be regarded as a mere incident to the wages, for which there is undoubtedly a privilege.

By the English Merchants' Shipping Act, 17 & 18 Vict. chap. 104, sec. 228, subd. 1, "if the master or any seaman or apprentice receives any hurt or injury in the service of the ship to which he belongs, the expense of providing the necessary surgical and medical advice, with attendance and medicines, and of his subsistence until he is cured, or dies, or is brought back to some port in the United Kingdom, if shipped in the

United Kingdom, or if shipped in some British possession to some port in such possession, and of his conveyance to such port, and the expense (if any) of his burial, shall be defrayed by the owner of such ship, without any deduction upon that account from the wages of such master, seaman, or apprentice."

These provisions of the British law seem to be practically identical with the Continental codes. In the English courts the owner is now held to be liable for injuries received by the unseaworthiness of the vessel, though not by the negligence of the master, who is treated as a fellow servant of the seamen. Responsibility for injuries received through the unseaworthiness of the ship is imposed upon the owner by the Merchants' Shipping Act of 1876, 39 & 40 Vict. chap. 80, section 5, wherein in every contract of service, express or implied, between an owner of a ship and the master or any seaman thereof, there is an obligation implied that all reasonable means shall be used to insure the seaworthiness of the ship before and during the voyage. *Hedley* v. *Pinkney &c. Steamship Co.*, 1894, App. Ca. 222, an action at common law. Beyond this, however, we find nothing in the English law to indicate that a ship or its owners are liable to an indemnity for injuries received by negligence or otherwise in the service of the ship. None such is given in the Admiralty Court Jurisdiction Act of 1861, although it seems an action in admiralty will lie against the master *in personam* for an assault committed upon a passenger or seaman. *The Agincourt*, 1 Hagg. Adm. 271; *The Lowther Castle*, 1 Hagg. Adm. 384. This feature of the law we have ourselves adopted in general admiralty rule 16, declaring that "in all suits for assault or beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be *in personam* only." In England the master and crew are also treated as fellow servants, and hence it would follow that no action would lie by a member of the crew against either the owners or the ship for injuries received through the negligence of the master. *Hedley* v. *Pinkney &c. Steamship Co.*, 1894, App. Ca. 222. It is otherwise, however, in Ireland, *Ramsay* v. *Quinn*, Irish Rep. 8 C. L. 322, and in Scotland, where

the master is regarded as a vice principal. *Leddy* v. *Gibson*, 11 Ct. Sess. Cases, 3d Ser., 304.

The statutes of the United States contain no provision upon the subject of the liability of the ship or her owners for damages occasioned by the negligence of the captain to a member of the crew; but in all but a few of the more recent cases the analogies of the English and Continental codes have been followed, and the recovery limited to the wages and expenses of maintenance and cure. The earliest case upon the subject is that of *Harden* v. *Gordon*, 2 Mason, 541, in which Mr. Justice Story held that a claim for the expenses of cure in case of sickness constituted in contemplation of law a part of the contract for wages, over which the admiralty had a rightful jurisdiction. The action was *in personam* against the master and owner for wages and other expenses occasioned by the sickness of the plaintiff in a foreign port in the course of the voyage, all of which were allowed. The question of indemnity did not arise in this case, but the court held that upon the authority of the Continental codes and by its intrinsic equity there was no doubt of the seaman's right to the expenses of his sickness.

This case was followed in *The Brig George*, 1 Sumner, 151, and in *Reed* v. *Canfield*, 1 Sumner, 195. Though the last case did not involve the question of indemnity, Mr. Justice Story, in delivering the opinion, remarked that "the sickness or other injury may occasion a temporary or permanent disability; but that is not a ground for indemnity from the owners. They are liable only for expenses necessarily incurred for the cure; and when the cure is completed, at least so far as the ordinary medical means extend, the owners are freed from all further liability. They are not in any just sense liable for consequential damages. The question, then, in all such cases is, what expenses have been virtually incurred for the cure."

The question of indemnity, however, was fully considered by Judge Brown of the Southern District of New York in *The City of Alexandria*, 17 Fed. Rep. 390, which was an action *in rem* for personal injuries received by the cook in falling through the fore hatch into the hold; and it was held that upon common law principles the claim could not be sustained, as the

negligence through which the accident occurred was that of fellow servants engaged in a common employment. The court, however, went on to consider whether the negligence, upon the recognized principles of maritime law, entitled the libellant to compensation from the ship or her owners in cases not arising from unseaworthiness. After going over the Continental codes, the cases above cited and a few others, Judge Brown came to the conclusion that he could find "no authority in the ancient or modern codes, in the recognized text-books, or the decisions on maritime law, for the allowance of consequential damages resulting from wounds or hurts received on board ship, whether arising from ordinary negligence of the seaman himself, or of others of the ship's company. Considering the frequency of such accidents, and the lasting injuries arising from them in so many cases, the absence of any authority holding the vessel liable, beyond what has been stated, is evidence of the strongest character that no further liability under the maritime law exists."

The general rule that a seaman receiving injury in the performance of his duty is entitled to be treated and cured at the expense of the ship was enforced in *The Atlantic*, Abbott's Adm. 451, though it was said in this case and in *Nevitt* v. *Clarke*, Olcott, 316, that the privilege of being cured continues no longer than the right to wages under the contract in the particular case. In *The Ben Flint*, 1 Abb. U. S. 126; *S. C.*, 1 Biss. 562, the claim to be cured at the expense of the ship is held to be applicable to seamen employed on the lakes and navigable rivers within the United States. See also *Brown* v. *Overton*, 1 Sprague, 462; *Croucher* v. *Oakman*, 3 Allen, 185; *Brown* v. *The Bradish Johnson*, 1 Woods, 301.

In *The Edith Godden*, 23 Fed. Rep. 43, the vessel was held liable *in rem* for personal injuries received from the neglect of the owner to furnish appliances adequate to the place and occasion where used. In other words, for unseaworthiness. This is readily distinguishable from the previous case of *The City of Alexandria*, 17 Fed. Rep. 390, and is in line with English and American authorities holding owners to be responsible to the seamen for the unseaworthiness of the ship and her appliances.

In *The Titan*, 23 Fed. Rep. 413, the ship was held liable to a
deck hand, who was injured by a collision occasioned partly
by fault of his own vessel. The question of general liability
was not discussed but assumed. In the case of *The Noddle-
burn*, 28 Fed. Rep. 855, the question of jurisdiction was not
pressed by counsel, but merely stated and submitted. The case
is put upon the ground that, as the accident was occasioned by
the master knowingly allowing a rope to remain in an insecure
condition, the vessel was consequently unseaworthy. In *Olson*
v. *Flavel*, 34 Fed. Rep. 477, libellant was allowed to recover
damages for personal injury suffered by him while employed
as mate, but if there were any negligence on the part of the
respondent, it appears to have been in not providing proper ap-
pliances, so that the case was one really of unseaworthiness.
In the case of *The A. Heaton*, 43 Fed. Rep. 592, a seaman was
allowed to recover consequential damages for negligence of the
owners in not providing suitable appliances, although in the
opinion, which was delivered by Mr. Justice Gray, he seems to
assume the right of the seaman to recover against the masters
or owners for injuries caused by their willful or negligent acts.
The case however was one of injuries arising from unseaworthi-
ness, although the learned judge in his discussion does not draw
a distinction between the cases arising from the unseaworthi-
ness of the ship and the negligent act of the master. It is in-
teresting to note that in *The Julia Fowler*, 49 Fed. Rep. 277, a
seaman, employed in scraping the main mast on a triangle sur-
rounding the mast, was allowed to recover for the breaking of
the rope which held the triangle, and precipitated libellant to
the deck; while in a case almost precisely similar, *Kalleck* v.
*Deering*, 161 Massachusetts, 469, the owners were held not to
be liable for an injury caused by the negligence of the mate in
constructing the triangle and ordering the seaman to use it. In
*The Frank and Willie*, 45 Fed. Rep. 494, the ship was held
liable to a sailor who was injured by the negligence of the mate
in not providing safe means for discharging the cargo. As the
opinion was delivered by Judge Brown, who was also the author
of the opinion in *The City of Alexandria*, 17 Fed. Rep. 390,
the case can be reconciled with that upon the ground that the

question was really one of unseaworthiness and not of negligence.

Upon a full review, however, of English and American authorities upon these questions, we think the law may be considered as settled upon the following propositions:

1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. *Scarff* v. *Metcalf*, 107 N. Y. 211.

3. That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident.

It will be observed in these cases that a departure has been made from the Continental codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876, above quoted, *Couch* v. *Steel*, 3 El. & Bl. 402; *Hedley* v. *Pinkney &c. Co.*, 7 Asp. M. L. C. 135; 1894, App. Cas. 222, and in this country, in a general consensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own.

2. It is insisted, however, that a lien is given upon the vessel by a local statute of Wisconsin, Rev. Stat. of 1898, sec. 3348,

repeating a previous statute upon the same subject, which provides that every ship, boat or vessel used in navigating the waters of that State shall be liable " for all damages arising from injuries done to persons or property by such ship, boat or vessel," and that the claim for such damages shall constitute a lien upon such ship, boat or vessel, which shall take precedence of all other claims or liens thereon. As the accident happened within three miles of the port of Milwaukee, and as the constitution of Wisconsin fixes the center of Lake Michigan as the eastern boundary of the State, there is no doubt that the vessel was navigating the waters of that State at the time of the accident. But the vital question in the case is whether the damages arose from an injury done to persons or property *by such ship,* boat or vessel. The statute was doubtless primarily intended to cover cases of collision with other vessels or with structures affixed to the land, and to other cases where the damage is done by the ship herself, as the offending thing, to persons or property outside of the ship, through the negligence or mismanagement of the ship by the officers or seamen in charge. To hold that it applies to injuries suffered by a member of the crew on board the ship is to give the act an effect beyond the ordinary meaning of the words used. Would it apply, for instance, to injuries received in falling through an open hatchway ? Or to a block blown against a seaman by the force of the wind, though the accident in either case might have resulted from the negligence of the master ? We think not.

The act in this particular uses the same language as the seventh section of the English Admiralty Court Act of 1861, which declares that " the High Court of Admiralty shall have jurisdiction over any claim for damage done by any ship." Construing that act, it has been held by the Court of Admiralty that it applies to damages occasioned by a vessel coming in collision with a pier, *The Uhla,* L. R. 2 Ad. & Ec. 29, note, and also to cases of personal injury, *The Sylph,* L. R. 2 Ad. & Ec. 24, where a diver, while engaged in diving in the river Mersey, was caught by the paddle wheel of a steamer and suffered considerable injury ; but not to a case where personal injuries were sustained by a seaman falling down into the hold of a vessel,

owing to the hatchway being insufficiently protected, *The Theta*, 1894, P. D. 280, or to loss of life, *The Vera Cruz*, 9 P. D. 96. As we have indicated above the statute was confined to cases of damage done by those in charge of a ship with the ship as the "noxious instrument," and that cases of damages done *on board* the ship were not within the meaning of the act of damages done *by the ship.*

In the case under consideration the damage was not done by the ship in the ordinary sense of the word, but by a gangway, which may be assumed to be an ordinary appliance of the ship, being blown against the libellant by the force of the wind.

*It results that the first and third questions must be answered in the negative.*