McCOY v. J. W. PAXSON CO. et al.

(District Court, E. D. Pennsylvania. May 27, 1914.)

No. 62 of 1913.

SEAMEN (§ 29*)—PERSONAL INJURIES—LIABILITY OF VESSEL OWNER—DEFECTIVE APPLIANCE—RELATION TO VESSEL.

Libelant was permitted by the master to ride on a scow which was being towed down the river from Philadelphia, and, while she was docking at her destination, he was injured, as alleged, by reason of a defective appliance on the vessel. The scow was without motive power, and the master was authorized to hire but one other person as a deck hand, which he had already done, and the deck hand was with him. He was also forbidden to take any other person on board, and the owners did not know that he had done so. Held, that libelant was not in the service of the boat, and the owners were under no obligation to look after his safety nor liable for his injury.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by Patrick McCoy against the J. W. Paxson Company and others, owners of the barge Estelle. Decree for respondents.

Philip Sterling and Lewis, Adler & Laws, all of Philadelphia, Pa., for libelant.

H. Alan Dawson and Biddle, Paul & Jayne, all of Philadelphia, Pa., for respondents.

J. B. McPHERSON, Circuit Judge. This is an action in personam for bodily injuries suffered by the libelant, Patrick McCoy, on November 25, 1911, and was brought against the owners of the tug Cahill and the owners of the barge or scow Estelle. At the trial, however, the charge against the tug was abandoned, and the only question now is the fault of the scow.

Primarily the libelant's right to recover depends upon his relation to the scow. Unless he was a deck hand in the service of the vessel, he cannot sustain the action. This point was disputed, and in my opinion the two witnesses called to establish the hiring did not prove it to be a fact. On the contrary, this is what occurred:

Hutton was the so-called "master" of the scow. She was 115 feet long, 23½ feet beam, without motive power, and was used solely on short voyages to carry cargo for her owners. Her capacity was 350 tons. Hutton was no doubt the "boss," but he was an ordinary laborer and with one other man, Coogan, constituted the full crew. This was his first trip as master, and he was to receive $85 per month, out of which he was to pay Coogan $25, and to furnish provisions costing about $11.25 for each. He had no authority to hire more than one deck hand, and he was forbidden to take any other person on board; the accommodations on the vessel, indeed, being limited to himself and one hand. On November 23d, the day before the scow started on the voyage in question, McCoy came to the dock in Philadelphia where the boat was lying. He had known Hutton for about two years, and asked permission to accompany the scow on its trip to Bridgeton, N. J. He had been a fireman on vessels, but had never served as a deck hand. He had just had a difficulty with his wife growing out of his habits of drink, and one of the city magistrates had compelled him to take the pledge for a year. He had broken his promise immediately, however, and apparently his request to Hutton was due to a wish to leave the city, at least for a time. Hutton agreed that he might go down the river on the scow, and the agreement was followed by drinks ashore and by bringing a bottle of whisky on board. On November 24th the scow started for Bridgeton with about four-fifths of a full cargo of coal, and on the way down McCoy did some unimportant work. Bridgeton was reached that evening, and the accident happened the next day.

Even if it be assumed, for the purposes of this case, that under some circumstances Hutton might have had the power to hire a second deck hand, the fact is that he did not do so. The usual crew of similar scows is the "master" and one man; there was no need for another on this occasion, as Coogan was already employed and was experienced

and competent; and I am satisfied that Hutton's account of what took place at the dock is not worthy of confidence. What really happened was that, in violation of his orders, he promised as a favor to take McCoy on the scow to Bridgeton. But he made no attempt at hiring, and of course the owners of the scow did not know, and had no reason to know, that a passenger was on board, and they were therefore under no obligation to look after his safety.

But, even if this point be laid aside, we come next to observe that the libelant's case depends secondly upon the assertion that a horn of the forward starboard chock was broken, and that a hawser was thus enabled to slip out of the chock in the process of warping the barge through a drawbridge, whereby the libelant's left leg was injured so badly that amputation became necessary. Concerning this asserted defect in equipment, the evidence is conflicting, but the decided weight is against the libelant. Only Hutton testified that the chock was broken, and his testimony is no more satisfactory on this point than on the other. Other witnesses swore distinctly, and I find the fact to be, that the chock was not broken at all but was in good order, and I experience no difficulty in coming to the conclusion that the injury was in no respect due to a defective condition of the chock. Indeed, I am convinced that the principal cause of the injury was the negligence of Hutton himself. As the barge slowly moved forward, influenced by the flood tide and by the operation of warping, it was his business to see that the shore end of the hawser was cast loose as the chock approached the point where the end had been made fast; and, if he had discharged this easily performed duty, the accident could not possibly have happened. In fact, there are excellent reasons against putting the hawser into the chock at all, but to allow the shore end to remain fast was a plain mistake.

I say nothing on the subject of McCoy's contributory negligence, since either of the two matters already considered is sufficient to bar recovery. As he was not a seaman, the doctrine of The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, does not apply.

A decree may be entered dismissing the libel.