## THE WILLIAM NELSON.

District Court, W. D. New York. April 19, 1929.

Dorsey W. Kellogg, of Buffalo, N. Y., for libelant.

Holding, Duncan & Leckie, of Cleveland, Ohio, for respondent.

540

HAZEL, District Judge. Libelant, a fireman aboard the respondent's steamer, was directed by the first assistant engineer to clean out the back heads and ashes in the combustion chamber of the fire box. After removal of the fire and cooling the fire box, it was necessary for him to enter with shovel, hose, and extension light to clean it out. The fire box is 2 to 3 feet wide, the floor of the chamber having grate bars 5 to 6 feet long, while the bridge wall at the end of the grate is about a foot high and a foot and a half wide at the top, extending from one side to the other. It is 1½ feet from the top of the bridge wall to the steel ceiling, while the back head or combustion chamber is about 7 feet high, 2½ feet wide at the top, and 3 feet wide at the bottom. After putting in the shovel, libelant crawled in with a hose in his left hand and an extension light in his right, and, after crawling along the grate bar and placing one leg over the bridge wall to get at the ashes from the back heads to shovel over the bridge wall, some one outside the fire box turned on the hose, and water instantly filled the fire box with steam and ashes. Evidently the interior had not been sufficiently cooled. In protecting his face with his arms, libelant's left arm was burned, and his back, coming in contact with the corrugated steel, was injured. His knee, left elbow, and right hip were also injured.

Libelant was experienced in work of this character. In fact he had worked on steamers for a period of 12 years—most of the time as a fireman—and cleaning out fire boxes was not new to him. It is claimed that the steamship was negligent because of its failure to station a man outside the fire box to turn on the hose when so directed by him, and further that the first assistant engineer was negligent in sending him into the chamber before it was sufficiently cooled. The steamship, however, was not unseaworthy, and no defect or impairment in her boilers or furnaces contributed to the injury. Assuming that there was negligence on the part of the assistant engineer, it was not, in such an action as this, an act of negligence attributable to the steamship or her owner. No maritime tort for which a maritime lien arose resulted from the remissness of the assistant engineer or of any member of the crew who were fellow servants of libelant. For this reason there can be no recovery of indemnity for the injuries sustained. Nor does failure to promulgate a rule for supervising the cleaning out in question give cause for the recovery of indemnity, since the particular work did not endanger his safety from unseaworthiness of the vessel. Failure to guard the hose or water tap may perhaps have been a mismanagement on the part of a fellow servant, but the omission has no relation to unseaworthiness or structural defects. The Osceola, 189 U. S. 156, 23 S. Ct. 483, 47 L. Ed. 760. I therefore rule that no case is presented for allowance of indemnity, but I think his right to maintenance and cure is fairly supported by his version of the injury, although no specific demand is made in the libel. That he received an injury is disputed by various witnesses, but I have no doubt he sustained hurt to his back near the right ilium, and a burn on his left arm from elbow to wrist. Dr. Paul, who examined him a few days after he left the ship, gave corroboratory testimony as to the hurt on his knee and the burn on his arm. The burn left no permanent scar, and, though at the time of the trial there was some tenderness on the right sacroiliac, it is believed that this condition will readily respond to treatment. Libelant did not avail himself of the right to obtain treatment at the Marine Hospital, although he twice applied to the master for a ticket of admission, but each time, he testified, the master asked him to return later. Instead of again applying, he left the ship, claiming the chief engineer had said he was lazy and had threatened to beat him up. I am, however, disinclined to believe that he was threatened. He could have obtained a ticket from the Lake Carriers' Association, as contended by claimant, or have gone directly to the Marine Hospital and sought admission; but he evidently assumed that it was necessary that the master of the steamship should issue a ticket.

The Bouker Case (C. C. A.) 241 F. 831, cited by claimant, was different from this. In that case the mariner deliberately refused to avail himself of the hospital privilege, and I think libelant is fairly entitled to an award for cure and maintenance. Aside from the doctor's fee of $60, a further award of $250 will, I think, compensate him for any other expense for treatments to relieve his condition.

A decree with costs may accordingly be entered.