## THE S. S. DORA.
### No. 332.

District Court, E. D. Louisiana.
Aug. 7, 1939.

Samuel J. Tennant, Jr., of New Orleans, La., for libelant.

Terriberry, Young, Rault & Carroll, and Benjamin W. Yancey, all of New Orleans, La., for respondent.

660

BORAH, District Judge.

This is a libel in rem against the S. S. Dora seeking to recover damages for an injury alleged to have been sustained on October 31, 1937 by Carradine, a messman and member of the crew, because of the neglect of Commercial Molasses Corporation, the owner of the said vessel, to furnish him with a seaworthy ladder and proper illumination in the vicinity thereof. The libel contains two causes of action; the first to recover damages under the maritime law for injuries resulting from the unseaworthiness of the vessel, and, second, to recover additional sums for maintenance and cure. Specifically it is alleged that the corporate owner rendered the vessel unseaworthy "by allowing a railing on the right descending side of the ladder leading from the galley to the storeroom to be missing and in failing to properly light the said passageway"; and that at about 6:05 P. M. on the evening of the day in question when Carradine was attempting to go down the ladder from the galley to the storeroom, he miscalculated the distance to the landing by about two steps, lost his balance and because of the missing hand rail and poor visibility fell injuring his right hand.

The owner of the respondent denies that the vessel was unseaworthy in the particulars alleged; denies that the accident happened and that Carradine was injured in the service of the ship, and alleges that even if the accident occurred, that the case set up by Carradine is predicated solely on negligence, does not give rise to a maritime lien and cannot be the basis of a recovery in rem.

█ While the pleadings in this case are lacking in clarity, it is conceded that this is not an action under the Jones Act, 46 U.S.C.A. § 688, and that libelant is invoking a remedy based on unseaworthiness or defective condition of the ship or her equipment. Such being the admitted situation, respondent's contention that the cause of action is based on negligence is without merit, as liability for injuries arising out of neglect to supply a seaworthy vessel is not dependent on the exercise of reasonable care but is absolute. Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490, 1934 A.M.C. 1122, certiorari denied, 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701; The H. A. Scandrett, 2 Cir., 87 F.2d 708, 1937 A.M.C. 326. It follows that libelant can recover damages for personal injuries if he is able to show that the vessel was unseaworthy in some respect which proximately contributed to the injury. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. But that he cannot prevail in this action if he is unable to establish by clear and convincing evidence that the accident happened and that he sustained an injury aboard the vessel; and failing in this the vessel's unseaworthiness is immaterial.

█ There were no eyewitnesses to the accident that is alleged to have occurred on October 31, 1937. The steward testified that right after dinner on the evening in question he went down the companionway which leads from the galley to the ice box and removed the globe from its regular place in the socket behind the foot of the ladder and placed it in the storeroom. He did not see Carradine fall when shortly thereafter he went down the companionway, but he says he heard a little rumpus when he went down. On cross-examination the steward admitted responsibility for a false accident statement and admitted that all he knew about the accident was what he was told. In view of these admissions and for other reasons that need not be assigned, the Court is of the opinion that the testimony of this witness has no probative value whatsoever. The only other witness for libelant was the radio operator and he simply testified to the effect that he observed libelant's hands on the occasion when he served him meals and he did not notice anything wrong with them prior to the accident.

Throughout the trial libelant has refrained from specifying the nature of the injury which he claims to have suffered and his attitude in this regard is not without significance. His testimony here is merely that "he snapped" his right hand and that he suffered pain. However, when this libel was filed on March 4, 1938, which was approximately two months after he had been discharged from the hospital fit for duty and had returned to work on the S. S. Tanana as second cook, he swore that his injury was serious, severe and upon information and belief permanent and that he "became sick, sore and lame and disabled and has suffered and still suffers great pain and agony and has been prevented from working and has lost large sums of money which he otherwise might have earned all to his damage in the sum of $3250."

When the libelant accompanied by the steward reported the matter to the master some fifteen or twenty minutes after the alleged occurrence, the master noticed a slight swelling over the outer surface of the right hand. There was no sign of bruise, abrasion or cuts and no noticeable redness to the hand. On November 3, 1937, Carradine reported to the Marine Hospital at New Orleans as an outpatient. The admitting physician, having received a history of a prior injury, noted a possible fracture and requested an X-ray of the right hand. The record of his examination on entry however makes no mention of any bruise, abrasion, contusion or brush burn. X-ray findings made that day revealed "Palmer bowing of the fifth metacarpal, consistent with a fracture. The X-ray characteristics are those of an old fracture", which findings are inconsistent with the fracture having occurred on October 31, 1937. Three days thereafter libelant complained that his hand was bothering him and he was admitted to the main hospital where he remained until November 9, 1937, when he was discharged to outpatient status. He never returned for outpatient treatment.

On admission to the main hospital libelant's chief complaint, to use his exact words, was "Fracture 5th metacarpal". His clinical record further reveals that he responded in the negative when asked if he ever had a like or similar injury before, and that he listed his prior injuries as consisting only of a fractured jaw in 1932. The patient was given a thorough physical examination on November 7, 1937, and the examination of his extremities revealed a slight dorsal angulation of the fifth metacarpal. On the following day the following diagnosis was made, "Fracture right 5th metacarpal". During the time that libelant was receiving treatment at the Marine Hospital his hand was kept in a splint. The treatment which he received was for an old fracture in an attempt to straighten the bone, and according to the medical testimony was justified in view of the history as given by the patient on his admission to the hospital.

On November 16, 1937 libelant was examined by Dr. Ficklen, the respondent's physician. The doctor found a slight swelling over the ulnar border of the hand, over the fifth metacarpal, which was attributable to the fact that the callous had not healed in perfect alignment. An X-ray examination was then made which showed evidence of a fracture in the middle third of the fifth metacarpal. The doctor thereupon rendered his report and prognosis predicated on the assumption that libelant was telling the truth and that his injury had occurred on October 31, 1937.

Subsequent investigation disclosed that libelant claimed to have fallen down aboard the S. S. Narbo at Galveston, Texas, on July 8, 1937. On this occasion he came to New Orleans and presented to the claim agent of Lykes Bros. Steamship Co., Inc., a certificate apparently signed by a surgeon of the United States Public Health Service reading as follows:

"7-8-37.

"Carradine, Leon.

"The above has a fracture of the right hand—will be unable to work for about six weeks to two months."

On the basis of the accident report which tended to confirm some of Carradine's contentions, and because of his insistence of a quick and relatively small settlement, the case was on July 12, 1937 settled for $155. On that day Carradine had been to the Marine Hospital in New Orleans and had his hand X-rayed. The X-ray was found unsatisfactory and he was told to return to the outpatient department, when it was expected that he would have another X-ray examination. In the meantime, however, he settled his claim and left on July 13, 1937 without leave of the hospital.

The investigation further disclosed that Carradine, after settling the case with Lykes Bros., signed on the S. S. Telde of the United Fruit Co., and that on August 29, 1937, he again claimed to have fallen and to have sustained a fracture of the right hand. On the day following the alleged accident Carradine presented himself to the Marine Hospital and the United Fruit Co. in Baltimore and repeated the process he had used against Lykes Bros. X-rays were taken at the Marine Hospital and by the company's specialist. The radiologist at the Marine Hospital reported, "The right hand shows an abnormality in the scaphoid bone, producing a notched effect approximately two by two millimeters in size. However, this cannot be positively recognized as a fracture in either of the four views. No other evidence of fracture seen in the wrist or hand (right)". His testimony is also to the effect that the fifth metacarpal bone shows a curved

outline, more so than is normal, with slight defect on the palmar surface of the shaft of the bone, but he could not recognize a defect which he could positively identify as a fracture. The company's specialist reported that his examination disclosed an old fracture of the fifth metacarpal completely healed. Also a recent fracture through the lateral border of the navicularis, involving the distal articular surface, no displacement. In this case as in the previous one, and because of an expressed desire to visit his mother in Florida, libelant pressed the claim agent for a quick and relatively small settlement. On August 30, 1937, settlement was made in the sum of $192 and libelant did not return to the hospital.

From the foregoing it will be observed that there are five sets of X-rays in this case. The two sets of pictures taken in Baltimore on August 30, 1937, and the pictures taken by Dr. Ficklen at New Orleans on November 16, 1937 have been compared by the doctors in Baltimore and it has been definitely established that the condition of the bones in Carradine's right hand is identical in all of the plates. The radiologist of the Marine Hospital at New Orleans has placed side by side the Baltimore pictures and his own plates of November 3, 1937 and has found that the bone condition shown is identical in all of these pictures. He testified that there was no bone injury in Carradine's hand as of November 19, 1937 which had not already existed in August, 1937. Dr. Ficklen compared all of the plates from July 12, 1937 through November 16, 1937 and found that they all show exactly the same condition. In other words, the plates which were taken after service aboard the Dora reflected no bone injury which did not exist in each and every plate that was taken before Carradine joined the Dora. Dr. Ficklen, with this additional information before him, testified that libelant had no disability on November 16, 1937, that the swelling in Carradine's right hand was caused by the old fracture in the fifth met-

acarpal not having been put back into perfect alignment.

The record in this case reveals that Carradine was involved in a series of accidents and that eighteen claims were made by him during the four and a half year period commencing in 1932, on which he has collected sums ranging between $25 and $335. What happened in two of these cases has already been considered; the full details with reference to the other claims have not been put into the record.

There is one other circumstance that requires mention and it bears directly on libelant's veracity and credibility. When libelant was being interrogated on cross-examination with reference to the aforementioned claim against the United Fruit Company he was asked whether or not he claimed to have sustained a fracture of the right hand on the Telde and he replied that he had sustained a fracture to the right thumb. The truth of the situation is that no claim was ever made that his thumb had been in any way involved in the alleged accident and all of the medical testimony is to the effect that there was no evidence of any fracture to the thumb. Because one doctor thought he recognized a recent fracture in the scaphoid bone, the argument is made that libelant was justified in stating that he fractured his thumb because a fracture to the scaphoid bone will incapacitate the thumb. The Court confesses its inability to follow this process of reasoning. Furthermore there is nothing to show that libelant entertained this view or that he was at all conversant with the functions of the scaphoid bone, and if he was correctly informed he would have known that the scaphoid is a wrist and not a finger bone.

In the light of the foregoing and after a careful study of the record, I find no difficulty in reaching the conclusion that libelant has failed to prove by creditable and convincing evidence that he sustained any injury in the service of the S. S. Dora. The libel should be dismissed with costs. Let a decree be entered accordingly.