## GOMES v. PEREIRA.
### No. 87.

District Court, D. Massachusetts.

Dec. 19, 1941.

C. Richard Clark and William G. Clark, both of Gloucester, Mass., fór plaintiff.

Frederick H. Tarr, of Gloucester, Mass., for defendant.

SWEENEY, District Judge.

This is an action in which the plaintiff seeks to recover for cure and maintenance only as a result of injuries received in the course of his duties aboard the Schooner Portugal. The defendant denies liability for cure and maintenance.

### Findings of Fact.

From the evidence submitted, the following findings are made: On May 13, 1937, the plaintiff, who was employed as a purser aboard the Portugal, acting under orders from the captain, accompanied the captain to the office of the owners of the vessel for the purpose of securing money in payment of the catch which had just been delivered. The boat had been in only eight hours. After securing the money at the office, and while returning to the ship, the plaintiff slipped on some slime on the wharf, and severely injured his knee. The wharf is owned and operated by the Boston Fish Market Corporation. It was the purser's duty to make the rounds of the various fish stalls to ascertain prices and to secure the money from the office of the owners, as he was doing when the injury occurred.

After his injury, the plaintiff was taken to the Boston City Hospital where it was found that no break in the bones had occurred. He was given crutches, and was discharged from the hospital the same day. He returned to the boat, and accompanied it to Gloucester, its home port. By the time that he reached Gloucester, he was in considerable pain, and took a taxi to his home, and called in his family doctor. No one in behalf of the vessel offered or suggested treatment to him. The following day, acting under his doctor's advice, he reported to the Addison Gilbert Hospital for X-rays of his knee. It was ascertained that the cartilage in and about the knee was torn. A cast was put on his leg, which remained on it for about seven weeks. After the cast was removed, he was referred to an orthopedic specialist, Dr. Brett, who advised an operation, and operated on his knee in August, 1937. The plaintiff spent three weeks in the hospital, and then was discharged to his home where he was confined to his bed for about four more weeks. After that, he needed crutches until about Christmastime. Thereafter, he used two canes, and, later, one cane, and about March, 1938, he was able to walk without any support, except that his knee was weak and uncertain.

He incurred expenses for medical bills in the amount of $568.50. The reasonable cost of his maintenance during the period of recovery, which was the normal period for this type of injury, was $436.50.

During the ensuing months he did odd jobs averaging about six hours a week as watchman aboard boats in the harbor. Later he secured employment with the WPA, but was unable to carry on. In May, 1940, he became a delegate for the Fishermen's Union, and is so employed today.

Sometime after his injury occurred, the plaintiff brought suit against the owner of the wharf, alleging that his injury was at-

tributable to negligence on its part. The case never reached the trial stage, but was settled on the basis that the plaintiff received $1,800 in exchange for a covenant not to sue. In this covenant, a copy of which is before the court, the plaintiff stated: "it being the intention of the said Frank P. Gomes to preserve whatever right or rights he may have by reason of said injuries against the Schooner 'Portugal' and Owners."

## Discussion.

At the time of the plaintiff's injury, there can be no doubt that he was working in the ship's service. Although the injury occurred ashore, nevertheless, it was part of his duty to go ashore and secure the proceeds of the catch. There is no suggestion that his injury arose as a result of his own misconduct, and hence an absolute right to cure and maintenance at the boat's expense attaches. As was stated in The Osceola, 189 U.S. 158, 23 S. Ct. 483, 484, 47 L.Ed. 760, " 'a mariner being ashore in the master's or the ship's service, if he should happen to be wounded, he shall be maintained and cured at the charge of the ship' ". See, also, The Montezuma, 2 Cir., 19 F.2d 355.

I cannot find that, when he delivered his covenant not to sue the owner of the wharf, he, in any way, waived his right to proceed against the vessel. In fact, he particularly preserved that right. There is no evidence to support a contention that, if a recovery is allowed in this action, it will result in a dual recovery. The plaintiff accepted $1,800 for what he terms was his permanent injury, and there is no evidence that he collected anything from the owner of the wharf which could be construed as the equivalent of either cure or maintenance.

## Conclusions of Law.

The defendant's requests for rulings numbered 3 and 4 are granted. They are as follows:

"3. Upon all the evidence in the case, the defendant was not guilty of any fault or negligence, and the liability of the defendant, if any, is based solely upon his obligations as owner of the vessel Portugal to provide care, maintenance and cure to the plaintiff as one of the crew of said vessel.

"4. The defendant is in no way liable to the plaintiff for the loss of wages during the period of the plaintiff's disability or for damages for his temporary or permanent disabilities."

The defendant's requests numbered 1, 2, 5, 6, 7, and 8 are denied.

From the foregoing, I conclude and rule that the plaintiff is entitled to recover from the defendant the sum of $568.50, as cure, and the sum of $436.50, as maintenance, on account of the injuries received while performing duties in the service of the Portugal. A decree in the sum of $1,005 in favor of the plaintiff may be submitted.