## THE THEMISTOCLES.

(Circuit Court of Appeals, Second Circuit. June 6, 1916.)

No. 276.

1. MASTER AND SERVANT ☞217(1), 219(1), 226(1)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMED RISKS.

A servant assumes all the ordinary and usual risks and perils of the employment, as well as all others of which he knows, or by the exercise of reasonable care might know; but he does not assume such risks as are created by the master's negligence, nor such as are latent, nor such as are discovered only at the time of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574, 610, 624, 659, 660; Dec. Dig. ☞217(1), 219(1), 226(1).]

2. SHIPPING ☞84(3)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

Libelant, with others, was employed by direction of the master to clean a steamship, which had been loading cargo, working under orders of the chief steward. It was dark when they commenced, but they could obtain only two lamps, which were hung near a partly uncovered hatchway. During the night libelant was sent to straighten the hose being used to wash the deck, which lay across the hatchway and had become

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
235 F.—6

kinked. Some flour had been spilled on and around the hatchway, which, with the dirt and water from the leaking hose, had formed a paste, and when libelant stooped to take hold of the hose his feet slipped, and he fell through the hatchway and was injured. He had no previous knowledge of such condition of the deck, and could not see it well because of the dim light. *Held*, that the risk was one which he did not assume, and that he was not chargeable with negligence; that a finding that the ship was negligent in requiring him to work in a dangerous place without sufficient light was supported by the evidence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 350; Dec. Dig. ⊂⊃84(3); Master and Servant, Cent. Dig. § 492.]

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Sidoro Vaccarino against the steamship Themistocles; Nicholas D. Goulandris, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 225 Fed. 671.

This cause comes here on appeal from a decree of the District Court of the United States for the Eastern District of New York, awarding the libelant the sum of $4,800 damages, together with costs.

Cohen Bros., of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for libelant.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey and Mark W. Maclay, Jr., both of New York City, of counsel), for claimant.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This is an action to recover for personal injuries sustained by the libelant on November 15, 1913, on the steamship Themistocles, while lying at Pier 30, South Brooklyn, New York. The libelant, Vaccarino, was working on the vessel which had discharged her cargo and was being prepared to receive outward passengers and cargo. While so engaged he received the injuries for which he seeks to recover damages against the ship. His claim is that the injury was due to the negligence of the agents of the vessel in failing to provide him a safe place in which to work.

It appears that a great deal of cargo had been loaded in the number 4 hatch, where the accident happened. Dirt and refuse had accumulated there, which had to be removed before the space could be considered ready for the carriage of passengers. The captain told the regular stevedores of the steamer that he wanted the shelter deck cleaned, and they recommended Vincent Marra, a longshoreman. During the day on which this conversation occurred Marra had been working for the stevedores, and was told by them that when the day's work was done the captain wanted to see him. In the conversation which followed the captain of the Themistocles told Marra that he wanted him to get six men and clean the ship. Marra testified, referring to the six men, that the captain said to him: "These men work for the ship, for the company." And Vaccarino testified that Marra, when he engaged him, said that he was employing him "for the people that

owned the steamer," "I asked him," said Vaccarino, "who I was going to work for," and he said, "The company."

Thereupon Marra engaged the six men, including the libelant, to wash the ship. The work of washing the ship began at 7 o'clock in the evening and at that time it was dark. The men were furnished with two lamps. Marra asked for six lamps, so that each man might have the use of a lamp; but this was refused by the ship's steward. He said that, when he complained to Paskales, the steward, who gave him the lamps, the latter said he did not have any more, and that two were sufficient. The lamps were hung on each side of the hatch. According to the testimony "you could see some, but it was quite dark." Marra was asked, "Could you see the kink?" meaning the kink in the hose. His reply was, "No, that you couldn't see."

During the time the men were at work in cleaning the ship the chief steward of the vessel was present supervising the work. He was "the boss" of it, Marra testified. He gave Marra "his orders." "This man came to me continually, and told me to wash her and clean her, and do this, and do that," and he was there all night. The libelant, as we have seen, was one of the men employed that night under the instruction given by the captain, and so was at his work under the supervision of the chief steward of the Themistocles when the injury occurred. The captain told Marra to take his orders from Paskales, the chief steward. The captain of the ship, when asked whether Marra was working for him, answered, "Yes; the head of the workmen."

The court below held that the libelant was the employé of the ship, and not of an independent contractor, and we see no error in that conclusion. That being so, if the injury was due to negligence, and the libelant was not himself guilty of contributory negligence, the whole liability would rest upon the ship, as Marra was not an independent contractor. If the libelant was guilty of contributory negligence, that would not of necessity be a bar to his recovery, as courts of admiralty are not bound by the common and civil law rules governing cases of contributory negligence. In a case of contributory negligence, admiralty will apportion the damages if, in the exercise of a sound discretion, to do so seems to accord with the principles of equity and justice. We are not, however, in this case called on to consider any apportionment of the damages between the libelant and the ship. For we do not find in the facts disclosed by the record any reason for holding that the libelant has been guilty of contributory negligence. Much less is there any reason for holding, as the appellant's proctor urges, that the sole proximate cause of the accident was the libelant's own negligence. We have failed to discover any such negligence on his part.

The record discloses that a hose was used in cleaning the deck. It was fastened to a valve on the port side, the machinist turning on the water, which was supplied by the ship, when the engineer was notified. The rubber hose was in bad condition. It was covered with canvas, was full of holes, and leaked so that the men in cleaning the deck had to wear rubber coats. As the water did not come through

the hose when turned on, Marra thought that there was a kink in it, and he directed the libelant to go to the hatch cover and straighten out the kink. The hose lay between libelant and the open part of the hatch. He went upon the tarpaulin and stooped to pick up the hose; but before he touched it his feet slipped from under him and he fell into that part of the hatchway which was open. The third of the hatch was open; the rest being covered and having over it a black tarpaulin, which was doubled back. On top of the tarpaulin bags of flour had been left heaped five or six feet high. The space between the edge of the open hatch and the bags of flour was about three feet in width. The tarpaulin was slippery with grease. Marra described it as dirty from the figs that had been there. As some of the flour had sifted out of the bags and over the tarpaulin and the deck, the water from the leaking hose wet it and made it a slippery paste. The libelant had no knowledge of the slippery and unsafe condition this state of things occasioned. The captain of the vessel admitted that he knew the deck was slippery and "a dangerous place." The libelant was not familiar with its condition. After one side of the deck was washed, the witness Marra testified that it was necessary to pass the hose across the top of the hatch. That was the only way it could be done in order to wash the other side of the deck as the pipes from which the water came were only on one side of the ship, and the bunks around the hatch interfered. When it was attempted to pass the hose over, Marra testified, the hose "stuck," and he called Vaccarino to "take out that kink." "Go and clear that hose there before it breaks."

There is some evidence to the effect that when Vaccarino went to straighten out the kink he ran out on the hatch cover, gave the hose a kick with his foot to clear the kink, and in so doing lost his balance and fell over the edge and down into the hatch. An affidavit to that effect, made by Marra about two months after the accident, was introduced upon the trial. But Marra in his testimony in open court denied that he had ever said that Vaccarino had attempted to kick the hose. There was no other testimony than Marra's, denied by him at the trial, that Vaccarino kicked it. The hose at the time was lying about a foot and a half from the edge of the hatch. Vaccarino testified that as he was about to lean down and put his hand over to where the kink was he slipped and went to the bottom. He declared that he "had not even had a chance to touch the hose." And he swore, "I never used my foot at all." Asked if he could see in walking over the hose he replied: "There were only two lamps, and I couldn't see very good over there." Another witness, who was working at the time by the side of Vaccarino, one Grasso, testified that when the libelant reached the hose "he leaned over to catch the hose and get the kink out; but he didn't catch it when he slipped down and went over inside." Marra's testimony at the trial was that Vaccarino leaned over the hose and attempted to straighten it with his hands, and slipped and went over into the hatch. The court below, who saw and heard the witnesses, evidently did not believe Vaccarino kicked at the hose. And this court is not convinced that he was guilty of that act of negligence.

[1, 2] It is fundamental that a servant, on accepting an employment, assumes all the ordinary and usual risks and perils incident to the employment, as well as all risks which he knows, or in the exercise of reasonable care may know, exist. But the exception is as fundamental, and as well settled as the rule, that the servant does not assume such risks as are created by the master's negligence, nor such as are latent, nor such as are discovered only at the time of the injury. In this case the libelant knew nothing of the exceptional conditions under which he was working until he commenced the work in the dark. Marra had been at work on the vessel during the entire week, the accident happening on Saturday night. He was asked, "Vaccarino had been on the ship many times that week, hadn't he?" To which he replied, "No, sir." "Didn't you hire him to work the night before the accident?" To which he answered, "No, sir." Again he was asked, "Had you seen him on board the Themistocles any of the few days before the accident?" and he replied, "No, sir." What Vaccarino knew of the conditions about hatch No. 4 was what he learned when he began his work in the dark, aided by the insufficient light of the two lamps. The testimony shows the place was unsafe and that the lamps were inadequate. Under these circumstances we are unwilling to hold that this libelant assumed the unusual risks arising out of the conditions as they existed and of which he had no knowledge until the accident happened.

The libelee is charged with negligence: First, in failing to provide sufficient light, the work being done between decks in the dark; second, in directing the libelant to step upon a closed portion of the hatch which was covered by a slippery tarpaulin made so by grease, flour, and water leaking from a defective hose and making a kind of paste. If the action had been one at common law, the court would not have been justified in taking it from the jury, but should have submitted to the jury whether the defendant was guilty of negligence in the respects noted. The cause being in admiralty and the District Judge having considered these questions, this court should not reverse the decision rendered unless clearly convinced that it is wrong. This court is not so convinced.

The award of $4,800 cannot be regarded as excessive. On the contrary, it appears to us to be exceedingly conservative. The injuries this man sustained were severe. He suffered a compound comminuted fracture of the right femur and other injuries, including a fracture of the left clavicle. As a result of the accident his right leg was shortened four inches in the femur, his knee was stiff and ankylosed, and it will be necessary for him to use crutches permanently. He still suffers pain, even when lying down. He was confined to the hospital for six months. His temperature, while in the hospital, was at times as high as 104. Ice caps were kept on his head and morphine was administered to him several times a day. After he left the hospital, his surgeon testified that he found it absolutely necessary to treat him daily for four months; and more than a year after the accident and at the time of the trial the surgeon was seeing him once a week. He

was then 33 years of age. Prior to the accident he had been in perfect health. The accident has rendered him incapable of pursuing his former means of livelihood, or any similar gainful occupation.

Decree affirmed.

WARD, Circuit Judge (dissenting). The serious results of this accident are likely to mislead the judgment. Assuming that the libelant was a servant of the shipowners because, although employed and paid by Marra, the officers of the ship were in control of the operation (Atlantic Transport Co. v. Coneys, 82 Fed. 177, 28 C. C. A. 388), what is the negligence of the owners? The libelant was a sailor, familiar with ships and all dangers connected with them. If he had been hurt by the hatch cover breaking or falling out of place, or if he did not know that part of the hatches were off, and there was not light enough to see it, the shipowners would be responsible. But he was employed to wash out the dirt from a dirty 'tweendecks. Water alone, and more so if mixed with dirt, is likely to make the deck slippery. These were dangers involved in the duty he was performing. The only plausible explanation given of the accident is that the water and dirt and flour on the tarpaulin made it slippery. It seems to me a pure accident and risk of the employment. I discover no negligence on the part of the shipowners. Common-law cases are not applicable, because the findings of the jury upon the facts are binding on the appellate court.