### SORENSEN v. ALASKA S. S. CO.

(District Court, W. D. Washington, N. D. February 20, 1917.)

No. 3429.

1. MASTER AND SERVANT ⊚⟶203(1)—INJURY OF SERVANT—ASSUMPTION OF RISK.
    A servant assumes all of the ordinary risks of his employment, and also those which reasonable care would disclose, but not those created by the master's negligence, nor such as are latent, and not discovered until the time of the injury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–540, 542.]

2. MASTER AND SERVANT ⊚⟶224—MASTER'S LIABILITY FOR INJURY TO SERVANT —NEGLIGENCE.
    Libelant, with other seamen, was sent into the between-decks to trim a quantity of coal, which had been dumped through the hatchway above. In doing the work they dug a hole through the hatch leading into the hold below, which had also been filled with coal, except a small space at the top. Libelant passed down into the hold, and on being handed a lantern an explosion occurred, by which he was injured. The explosion, in view of the recent filling of the hold, was unusual. *Held* that, since the men had been given no instructions to go into the hold, the vessel was not chargeable with negligence which rendered the owner liable for the injury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 654.]

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. SEAMEN ☞11—INJURY IN SERVICE—RIGHT TO MAINTENANCE AND CURE.**
It is the uniform rule of admiralty that a seaman injured in the service of the ship is entitled to maintenance and cure, and wages, at least to the end of the voyage, irrespective of the question of negligence.
[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 187.]

In Admiralty. Suit by Henry Sorensen against the Alaska Steamship Company. Decree for libelant.

James B. Metcalfe, of Seattle, Wash., for libelant.

Bogle, Graves, Merritt & Bogle, of Seattle, Wash., for respondent.

NETERER, District Judge. The testimony shows that, several days previous to the 21st day of February, 1916, the steamship Victoria was lying at Boat Harbor, British Columbia, Canada, loading coal in the hold of the vessel from bunkers by pouring it through hatch No. 2, whence it fell through similar hatchways in the steerage deck and on the deck above the lower hold; that the hatchways were of the same size and located one directly above the other; that the coal was poured through the hatches continually to the lower hold, where 15 men were stationed around the hatch, and shoveled the coal to the sides of the vessel and around the hatch, until all of the space from the sides of the vessel and around the hatch had been filled, so that the coal rolled to a line immediately below the sides of the opening of the hatch, whereupon the men came to the between-decks and permitted coal to pour through the hatch into the lower hold until the hatch was filled and was sealed by the professional sealers, who were in charge of loading the coal; that at the time the hatch was sealed a circular V-shaped opening was formed around the hatch, about five feet wide at the top and about four or five feet deep at the deepest point. When the lower hold was filled and the hatch sealed, about 20 or 25 tons of coal was dumped into the hatch; the apex of this coal reaching to a point above the level of the steerage deck. This apex was trimmed down, and the steerage hatch cover placed over the hatch, and the vessel proceeded thence to Seattle. On the morning of the 21st of February, 1916, at 7 o'clock a. m., libelant was ordered by the boatswain into the between-decks with other seamen to trim this pile of coal into the wings of the 'tween-decks, and aft of the hatch of the 'tween-decks, leaving a small space for an additional cargo.

Libelant testified that they were directed to do the work in the best way they could. The boatswain testified that the order was "to go into the 'tween-decks and trim the coal into the wings and aft." The testimony further shows that electric lights were furnished on the boat, and that lanterns were also furnished. These lanterns were trimmed and lighted by persons employed on the vessel, and placed in suitable positions for use; that no specific order was given to take the lanterns, instead of using the electricity. The lanterns were taken by libelant and his fellow servants into the 'tween-decks and hung at places suitable to shed light upon the place where they were working. The coal, instead of being thrown to the sides of the vessel in the 'tween-decks, was thrown to a point about half way between the hatch and the side of the vessel, and, when the place to which it was thrown had been filled to the steerage deck, the coal rolled back to the place from which it had

been shoveled. An open space still remained, from the sides of the ship to the place where the coal was thrown, of some six or eight feet for the full space between-decks. The libelant and fellow seamen, instead of shoveling the coal to the sides of the vessel and filling the wings and aft, dug a hole through the hatch leading to the V-shaped opening in the hold of the vessel, and the libelant, being the smallest man of the seamen, went through this opening thus made into the open triangular space, and, while there, asked that a light be handed him, whereupon a light was passed to him by a fellow seaman, and, when taken into this space, the explosion followed. There is some testimony with relation to the defective ventilation of the hold of the ship. The testimony further shows that an explosion from coal gas within the time that this coal was loaded upon the vessel was an "unusual and unheard-of occurrence." In view of the conclusion which is forced from the testimony which is before the court, it is not necessary to discuss the ventilation of the hold of the ship.

[1] It is fundamental that a servant assumes all of the ordinary and usual risks and perils incident to which he has accepted employment, and also risks which reasonable care would disclose to exist. The servant does not assume risks that are created by the master's negligence, nor such as are latent and not discovered until the time of the injury. The Themistocles, 235 Fed. 81, 148 C. C. A. 575.

[2] It is contended by the libelant that, the explosion being unforeseen and unexpected in its nature, and occurring in the manner in which this transpired, negligence would be presumed, if unexplained, and the burden is cast upon the respondent to satisfactorily explain. Beall v. Seattle, 28 Wash. 593, 69 Pac. 12, 92 Am. St. Rep. 892, 61 L. R. A. 583; Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624. The contention of the libelant would have force, if the libelant was at a place where he was directed to be. The testimony, I think, is conclusive that the trimming of the lower hold had been fully completed by professional trimmers at Boat Harbor. I think all of the circumstances confirm the positive testimony of the respondent that no authority was given to the seamen to disturb the lower hold. The acts with relation to the sealing of the lower hold having been done by professional sealers, men engaged for that special service, and the condition of the space in the lower hold being a small V-shaped opening, in which but little coal could be placed, in the absence of testimony of any direction to the men to go into the place, I think the fact is conclusively established that no direction can be attributed to the order of the boatswain, any reasonable construction of which would lead a man into the lower hold, and this is further confirmed by the large space into which the coal could be placed on the 'tween-decks. The act of libelant in going into this small space in the hold of the ship was an act purely voluntary, without suggestion on the part of his superiors, and libelant is not entitled to recover an indemnity for negligence of the master upon this occasion.

[3] Recovery, however, may be had for maintenance and cure. It is the law of the sea that recovery may be had for wages, maintenance, and expenses of cure by a seaman injured on a vessel in the service of which he is engaged. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47

L. Ed. 760. It is the uniform rule of admiralty that a seaman, injured in the service of a ship, is entitled to maintenance and cure, and wages at least to the end of the voyage, irrespective of the question of negligence. The Santa Clara (D. C.) 206 Fed. 179. Act March 4, 1915, c. 153, § 20, 38 Stat. 1185 (Comp. St. 1916, § 8337a), is merely a provision fixing the status of injured seamen in command of vessels with relation to other employés on the ship, and provides that "seamen having command shall not be held to be fellow servants with those under their authority."

No recovery can be had for indemnity, and the only liability which exists is for any unpaid wages, and for maintenance and cure.