## CROCKETT v. BRANDT.

(Circuit Court of Appeals, Second Circuit. February 16, 1921.)

No. 137.

1. **Seamen** ⬭29(4)—**Careless handling of needle by seaman held cause of injury to his eye.**

   Injury to a seaman, caused by his piercing his eye with a needle while mending a sail, *held* on the evidence not due to any fault or negligence which rendered the ship unseaworthy, but to the careless manner in which he handled the needle.

2. **Seamen** ⬭29(1)—**Owner not liable for injury, through negligence of officers.**

   The owner of a vessel is not liable in damages for injury to a seaman resulting from the manner in which certain work was done, though it was by direction of an officer of the ship.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Frank Brandt against Walter E. Crockett. Judgment for plaintiff, and defendant brings error. Reversed.

This cause comes here on writ of error to the United States District Court for the Eastern District of New York. The plaintiff in error was the defendant below and is hereinafter referred to as the defendant. The defendant in error was the plaintiff below and is hereinafter referred to as the plaintiff. The case is stated in the opinion.

Bertrand L. Pettigrew, of New York City (Walter L. Glenney, of New York City, of counsel), for plaintiff in error.

Silas B. Axtell, of New York City, for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff is an alien, a subject of Holland and a resident of the state of New York, in the Southern

district thereof. He brought this action to recover indemnity for an injury which he sustained while serving as a seaman on the three-mast schooner George D. Edmunds. The defendant is one of the joint owners of the schooner, a citizen of the state of New York and a resident of the Eastern district thereof.

[1] It appears that on May 24, 1918, the plaintiff signed certain shipping articles as an able-bodied seaman on board the schooner at the port of Philadelphia for a voyage to Cuba. The injury occurred on July 16, 1918, while the vessel was in port at Manzanilla, Cuba, and it was caused by running a needle into his eye while he was sewing the mainsail, which he had been ordered by the chief officer of the schooner to mend. The allegation is that while he was mending the sail with the aid of a needle and yarn, and while in the exercise of due and proper care and without any negligence on his part, and by reason of the defective, old, and chafed and rotten condition of said sail, the needle and yarn were caused to go through the sail, striking and penetrating the plaintiff's right eye, necessitating its removal and the consequent loss of vision in the eye.

The plaintiff was an experienced seaman, 32 years of age, and with 16 years' experience as a sailor. He had been sewing sails a good many times during his 16 years at sea, and he had been at work sewing this particular sail for about 8 days prior to the accident. On the way down to Cuba, the schooner ran into a period of rough weather, lasting about three days, during which she was running with only the mainsail and the reefed foresail. This mainsail of the mainmast had been used throughout the voyage from Philadelphia to Manzanillo. When the vessel reached Cuba, the plaintiff and another one of the seamen were set to work putting necessary patches on this mainsail, which had been taken down and was spread out on top of the cabin.

At the moment of the accident the plaintiff was engaged in what was known as roping the mainsail, which consisted of sewing a rope to the edge of the sail, using a needle about 4 or 5 inches in length, with 6 strands of thread or rope, about 5 feet in length, for sewing material. At the time of the accident Brandt had just started with a new needleful, and, after passing the needle through the rope and through the sail, he held the needle in the palm of his hand, with the point sticking out about 2 inches. He pulled the thread through the rope and canvas until the knot pulled tight, and it is claimed that the knot was intended to pass between the strands of the rope until it reached the sail, and then it was supposed to hold tight; but on this particular occasion, when the plaintiff pulled it tight, the knot came through the canvas and the needle stuck into his eye.

The plaintiff's testimony is that ordinarily he would have pulled the thread out away from him; but the other man who was working on the sail was sitting close to him, so that he was afraid of sticking his needle into the other man, and therefore pulled it toward his own face. He was asked and testified as follows:

"Q. How did Hutchinson happen to be near you? A. Because he was mending; he was mending a small hole in the sail.

"Q. He was mending a small hole in the sail and was right near you? A. Yes.

"Q. Could you not have moved, and got around to one side, so as to avoid him? A. No; I couldn't, because the sail was close together; the place that he was sewing was close to me. I couldn't move or pull it away from him."

The plaintiff was removed to the hospital at Manzanillo, and he remained there for three months. The inside of the eye ran out and the eye had to be removed. He was returned to New York by the American consul, as is customary with seamen in our merchant marine. He was paid his wages until he left the ship and went into the hospital.

The complaint states two causes of action. In the first the plaintiff alleges that the vessel was unseaworthy and was not a safe place in which to work, and that he was not furnished with reasonably safe tools and appliances, and he seeks to recover damages in the sum of $10,000 for the loss of his eye. In the second, the plaintiff alleges that he has expended and will have to expend large sums of money for his maintenance, board, and lodging until he is able to perform work, and for that he makes claim in the sum of $500. No claim was made in the case for medical expenses, and none for wages.

At the close of the case counsel for the defendant moved for a non-suit, and for the direction of a verdict, on the ground that the plaintiff had failed to make out any failure on the part of the owner to perform any duty imposed upon it, and had failed to show that the proximate cause of the plaintiff's injury was any dereliction on the part of the owner. The motion was denied. The case was submitted to a jury, which brought in a verdict in favor of the plaintiff in the sum of $3,000.

The plaintiff urges four claims as to the vessel being unseaworthy:

(1) That there was not an extra new mainsail which could have been put in place of the sail which they were repairing.

(2) That the canvas in the sail was worn and weak, so that the knot on the thread pulled through the canvas.

(3) That the sail was not wide enough to permit doubling over the edge of it, so that the rope could be sewed to a double thickness of canvas, as was the customary manner of doing.

(4) That the mate ordered him to proceed in haste, as the sail had to be bent the next day, and there was no time to sew on a new piece of canvas along the edge of the old sail, so as to make it wide enough to allow the edge to be doubled over.

As respects the first of these grounds it is sufficient to say that the question whether the vessel had or had not an extra sail is not material, because the only importance of an extra sail was that it might be used in case the sail which was actually used blew away. If the ship had become unmanageable as the result of not having a new sail to take the place of one which had blown away, it might be said that the vessel was unseaworthy for want of a substitute sail. But that situation never arose, and the fact that the mainsail was used all the way from Philadelphia to Cuba, and that it withstood three days of heavy weather, shows very clearly that it was not unseaworthy. The plaintiff's

271 F.—27

own witness admitted that it must have been in pretty good condition to stand a three days' storm around Cape Hatteras. The sail was only two years old, and the plaintiff's expert testified that a sail that was only two years old was not too old to use. The plaintiff's accident was not due to the failure of any appliance on the ship to perform its proper function.

The testimony shows without contradiction that there were several large rolls of canvas in the locker in the captain's cabin suitable for making patches on sails. The following is an excerpt from the plaintiff's testimony, and it sheds light on the second, third, and fourth grounds assigned for the claim as to the unseaworthiness of the vessel:

"Q. Then you don't claim that there was not canvas enough there, if you had wanted to take the time to fix it. Is that right? A. I think there was enough for that patch.

"Q. So that, if you had taken the time, and if the mate had not told you that you didn't have time to do it, you could have gone to the locker, and got a piece of canvas, and sewed it onto the edge of the sail? A. No; he would have given it to me.

"Q. Well, if he had given it to you, could you have done it? A. Yes; it was not just exactly necessary.

"Q. You say the way that you had it you could not do it safely, because you couldn't turn it over far enough? A. Of course; but you are not so particular with an old sail, though.

"Q. But you say it was not wide enough to turn over in the proper way? A. No; it was not.

"Q. If you had sewed a piece on, it would have been wide enough, would it not? . A. Yes; it ought to be then.

"Q. And the only reason you didn't was because the mate told you that they wanted the sail the next day, and you didn't have time? A. Sure thing."

[2] The rules of law which govern the relationship between master and servant on land are not applicable to seamen. From early times they have been considered a peculiar class, and unusual protection has been extended to them. But we know of no rule of the maritime law which imposes upon the owners of a ship liability for an accident such as this. The unfortunate accident of which the plaintiff complains was the result of the plaintiff's own manner of doing his work. If it could in any manner be attributed to the negligence of the mate in improvidently hastening the work, the shipowner would not be liable therefor in a suit to indemnify the seaman for the injury. In Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, the court held that by the general maritime law the vessel owner is liable only for the maintenance, cure, and wages of a seaman injured in the service of his ship by the negligence of a member of the crew whether a superior officer or not; and in the particular case before us the plaintiff had received his wages and his expenses for "maintenance and cure" had been met.

In Erickson v. Roebling (C. C. A.) 261 Fed. 986, this court applied the rule of the Chelentis Case and held that the owners of a ship were not liable in damages for an injury to a seaman through adoption by a master of a dangerous method of discharging cargo. In the argument in this court counsel for the plaintiff sought to distinguish the Erickson Case from this on the ground that in the former case the

vessel was itself seaworthy, while in this the shipowner provided an unseaworthy vessel. But as this court is satisfied that there is no evidence of unseaworthiness of the vessel to be found in this record the distinction does not exist. No dereliction of duty on the part of the shipowner has been shown. Whatever caused the accident was a condition known to the plaintiff, and resulted from his own careless act, and was not due to any negligence or lack of care on the part of the owner in making the vessel or its appliances seaworthy.

Judgment reversed.