### THE REMUS.

(District Court, W. D. Washington, N. D. March 16, 1927.)

No. 10735.

1. **Shipping ⊚⇒84(3½)—Ship must furnish employees appliances reasonably capable of performing services required.**

Ship is liable for injuries to employee received through defective appliances furnished by ship, and duty is on ship to furnish appliances reasonably capable of performing services required.

2. **Shipping ⊚⇒86(2¾)—Evidence held to show that falls, which broke and caused injury to stevedore, were in defective condition, discoverable by reasonable inspection.**

Evidence relating to breaking of falls at inception of work of loading lumber into hold of vessel, while in proper use and not subjected to extraordinary strain, causing injury to stevedore, held sufficient to show that falls were in defective condition, which would have been discovered by ordinarily careful inspection.

3. **Shipping ⊚⇒84(5)—Negligence of stevedoring company in not dividing loads, and in using ship's defective falls, held no defense to ship, libeled for injuries to stevedore.**

Negligence of stevedoring company in not dividing sling loads of lumber, and in using ship's falls in their known dangerous condition, is no defense to ship, where defective falls were proximate cause of injury to stevedore.

In Admiralty. Libel by Hans Raglund against the steamship Remus, her engines, boilers, tackle, apparel, and furniture, claimed by the Akties Baha California. Decree for libelant.

Libelant seeks recovery for personal injury sustained while employed by a stevedoring company in loading lumber cargo in the lower hold, No. 4 hatch, of the steamer Remus, at the port of Everett. Loading was done with the aid of ship's tackle, booms, winches, and falls. The port boom was raised over the hatch, and the port fall ran from the winches to blocks and pulleys to the end of the boom. The starboard boom was raised over the starboard side of the ship, and the starboard fall ran from the starboard winch through blocks and pulleys to the end of the starboard boom. Starboard and port falls were connected by a swivel, to which a sling was attached. The starboard and port falls were operated by separate winches, and both falls were used. The port fall broke, causing the load of lumber to swing violently toward the starboard side of the ship, striking the hatch coaming, causing the starboard fall also to break, dropping the sling load into the hold of the ship, striking the libelant, causing his injury. It is alleged that the falls were rusty, worn, broken, and defective.

Douglas T. Ballinger, of Everett, Wash., for libelant.

Bogle, Bogle & Gates, of Seattle, Wash., for claimant.

NETERER, District Judge. [1] That an injury received by an employee through defective appliances furnished by a ship is actionable against the ship cannot be questioned, and the duty rests upon the ship to furnish appliances reasonably capable of performing the services required.

[2] Respondent ship had on numerous occasions taken cargo at the port of Everett, and its master knew the conditions of the cargo as placed upon the dock and of the manner of services and the requirement of its appliances. The injury was occasioned by carrying the fourth load. The apparent preponderance of evidence as to the weight of the sling loads is from 1,600 to 2,500 pounds. Mr. Fratt, produced by the libelant, an employee of the Clark Nickerson mill at Everett for five years, had compiled weights of lumber in all sizes from shipments of 100 to 200 cars per month in various dimensions and various conditions of dehydration, and says the weights generally run from 1,600 to 1,800 board feet, 1x6 medium dry lumber, 2,054 pounds; 2-inch plank, dry, 2,514 pounds; wet, 2,614 pounds. There is testimony that the loads contained between 1,500 and 2,000 board feet—the sling load that broke the fall about 2,000 feet; also that the loads ran from 1,600 to 2,300 feet; and that the loads deposited on the scow from the mill were not split. There is testimony on behalf of the respondent that merchantable fir lumber of the cargo in issue weighed approximately 3 pounds per foot, or 1½ tons per 1,000 board feet; that Brereton, in his book, which is said to be a standard work among lumbermen, compiled from averages over a period of years, gives the average weight as 3,333 pounds per 1,000 board feet.

I am satisfied that the greater weight of the evidence shows the weight of the load in question to be not in excess of 2,500 pounds per M, and that there were "little jaggers" where the falls were broken, and that the falls were worn, and no latent defect is disclosed. While the testimony of the respondent tends to show that an inspection of the falls was made, and that no defects were discovered, yet the testimony of the person whose duty it was to inspect the falls shows no inspection was made immediately preceding the use of the falls; and no inspection is shown to have been made by any one else, other than casual.

The boatswain, whose duty it was to examine the falls, testified that the starboard fall was new at Iquique and the port fall at Callao; the starboard fall was about two months old and the port fall less than three months. He said that the falls were greased at every port; that he personally examined the wire at frequent occasions, and when the ship arrived at a port and the derricks were rigged, the wires were hauled by hand on deck. When asked when he last examined the falls before using at Everett, he did not say that examination was made. I do not think that the testimony discloses a close inspection of the falls for some little while, at least before using at Everett.

The falls broke while in proper use and not subjected to extraordinary strain, and the breaking, under the circumstances, would indicate an insufficient and defective condition, and not in compliance with the ship's duty to furnish tackle. See Neptune Steam Nav. Co. v. Borkmann (C. C. A.) 118 F. 420. The fact that the falls broke at the inception of the work is evidence of impaired condition, and not suitable for the service to which it was placed. See The Portland (D. C.) 213 F. 699; The Montrose (C. C. A.) 186 F. 156. The conclusion appears inevitable that—the breaking of the falls immediately after employment—the defect would have been discovered by an ordinarily careful inspection, having in mind the "jaggered" and "worn" condition of the falls disclosed. See Emilia S. De Perez (C. C. A.) 248 F. 480.

[3] While the stevedoring company may have been negligent in not dividing the sling loads, or in using the falls in its, and to its agents, known condition, such negligence is no defense, since defective falls was the proximate cause of the injury. See The Jethou (D. C.) 2 F.(2d) 286; Buzynski v. Luckenbach S. S. Co. (D. C.) 12 F.(2d) 92.

The libelant, while severely injured at the time, is not permanently disabled, and from his appearance at the trial, no doubt, will soon be able to perform service. I think $5,000 will fairly compensate him for the injury sustained.