## THE JAMES E. FERRIS.

### No. 1811.

District Court, W. D. New York.
Aug. 24, 1932.

Dorsey W. Kellogg, of Buffalo, N. Y., for libelant.

Holding, Duncan & Leckie, of Cleveland, Ohio, for respondent.

KNIGHT, District Judge.

The libelant is seeking to recover damages resulting from an injury sustained while working aboard the claimant's vessel. On March 4, 1931, the steamer was being moored at the foot of Genesee street, having previously been unloaded elsewhere. One-inch wire cables were being used; the method being to run them to the dock and loop them back to the steamer. This work was made heavy by the fact that, although the cables were on winches, the engines were cold, and the cables had to be hauled by hand.

At the time of the injury, the cable on which the men were working had been put out to the dock and was being returned to the ship. A heaving line had been attached to the cable, which was then drawn up until it caught on the lip of the chock. It was slackened away and then pulled up, and, when it again hit the chock, the heaving line parted. Libelant claims that this caused him to fall backward on a fair lead in the windlass room, and that he thereby sustained severe injuries to his back and nerves. The claim for damages resulting therefrom is based on the unseaworthiness of the vessel, in that it was equipped with defective and inadequate ap-

pliances, rendering it unsafe as a place for libelant to work.

The claimant alleges ownership and denies the unseaworthiness of the line, and avers that, if libelant suffered the alleged injuries, they resulted from the unnecessary selection of a defective line by some member of the crew. Denial of knowledge of the injury is made, and it is claimed that any injury which occurred was the result of libelant's negligence, and was a risk incidental to his employment, which was assumed by his acceptance thereof.

Libelant has brought his case to this court under the old rules as distinguished from the new rules set up by the provisions of the Jones Act of 1920 (41 Stat. 988). The new rules merely provide an optional alternative action in personam on the law side of the court and are inapplicable in the present action. Under the old rules, in order to recover compensatory damages, the libelant must prove that the vessel on which he was injured was unseaworthy, or that the owners failed to supply and to keep in order the proper appliances. The Osceola, 189 U. S. 158, 23 S. Ct. 483, 487, 47 L. Ed. 760; The John Sherwin (D. C.) 24 F.(2d) 710; Keefe v. Matson Nav. Co. (D. C.) 46 F.(2d) 123; The Birkenhead (D. C.) 51 F.(2d) 116; The West Jester (D. C.) 281 F. 877. In the present case, the only allegation of unseaworthiness is the same as is relied upon to show failure to supply sufficient and adequate appliances. It is alleged that there were not sufficient ropes provided for the operation which libelant was helping to perform, and that the use of an inadequate and unseaworthy heaving line was permitted.

The burden rests upon the libelant to prove this by a fair preponderance of the evidence. His proof on this point consists of testimony by a fellow seaman that, when he was in the dunnage room, he saw no other lines, and that he did not see a heaving line for every cable; testimony by another seaman that the captain asked the mate for another line, and the mate said there was no other available; and his own testimony that, before the heaving line was attached to the cable, one of the men asked the captain if he could get a new line, and the captain replied that the line was good enough.

The testimony of the captain and the mate is to the effect that in the fall of the previous year a coil of 1,000 feet of three-eighths inch, 12 thread, hemp rat line had been put aboard; that that was the usual kind and size of rope used for heaving cables;

that it had been made up into heaving lines; and that the line in question was taken from these. It also appears that eight or ten lines were the same day used in the operation of tying up the vessel. The captain testified that the lines used in hauling the cables were new lines, and, more particularly, that prior to the accident he had inspected the line which broke when an attempt was made to haul in the cable and that it was a new heaving line. He further testified that, when he came on board to take the vessel to the elevator a few days previously, he had checked up on all the lines which at the time were hanging in the windlass room. There is other proof to show that adequate heaving lines were provided by the owner and were ready at hand.

It is therefore my conclusion, and I find, that the vessel was equipped with proper and sufficient heaving lines for use in hauling its cables.

■ It is libelant's contention that claimant is liable in negligence for the selection and use by the captain or mate of a defective heaving line. It is claimed that section 20 of chapter 153 of the Laws of 1915, 38 Stat. 1185 (so-called La Follette Act), changed the old rules in respect to the liability of a vessel for the negligence of a superior officer. I do not think that such contention can be sustained. Section 33, c. 250, Laws of 1920, 41 Stat. 1007 (Jones Act), 46 USCA § 688, expressly states that it amends section 20, supra, to read as follows (section 20) that: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

The Act gave a seaman a new right for the recovery of damages, arising out of the negligence of a superior officer, and the privilege of having a trial by jury on the common-law side of the court. This new right, however, is not given in an action in rem such as we have here. The rule of law as laid down in The Osceola, supra, remains the rule to be applied in this action. As there stated, it in part is: "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. * * *

That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

It has been repeatedly held by the courts that section 33 of the Jones Act has no application to an action in rem. The Pinar del Rio (C. C. A.) 16 F.(2d) 984, affirmed 277 U. S. 151, 48 S. Ct. 457, 458, 72 L. Ed. 827, is directly in point and conclusive. In that case the seaman sustained injuries from the breaking of a rope. It was claimed that the accident resulted from the negligence of the mate in selecting a defective rope when there was an abundant supply of good rope on board. The libel in rem was brought. The petitioner asserted his right to recover under the provisions of section 33, supra. The Circuit Court of Appeals held that a lien against the vessel is essential to every proceeding in rem against her, and that no lien arose by reason of section 33. The Supreme Court affirmed this view, and in so doing used this language: "The record does not support the suggestion that the Pinar del Rio was unseaworthy. The mate selected a bad rope when good ones were available. * * * Section 33 brings into our maritime law the provisions of certain statutes which define the liability of masters to employees originally intended to be enforced in actions at law. They imposed personal liability, and gave no lien of any kind. * * * This provision repels the suggestion that the intention was to subject the ship to in rem proceedings. * * * The section under consideration does not undertake to impose liability on the ship itself, but by positive words indicates a contrary purpose." That section 20 of the Seamen's Act of 1915 did not survive the act of 1920 is shown in The Birkenhead (D. C.) 51 F.(2d) 116, 117, in which the court said: "There can be no recovery against the ship for injuries caused solely by neglect of the master or of any of the crew." The court cites The Osceola, supra, and Pacific Company v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 73 L. Ed. 220. The rule is also approved in Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 S. Ct. 475, 66 L. Ed. 927; and Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Lindgren v. U. S., 281 U. S. 38, 50 S. Ct. 207, 74 L. Ed. 686; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 373, 38 S. Ct. 501, 62 L. Ed. 1171. Vide also The John Sherwin (D. C.) 24 F.(2d) 710; Roebling's Sons Co. v. Erickson (C. C. A.) 261 F.

986, 988; Crockett v. Brandt (C. C. A.) 271 F. 415, 418. In Crockett v. Brandt, supra, 2d Circuit, decided February 16, 1921, claimant sought to recover damages for injuries alleged to have been caused as a result of the direction of the mate. While the action was in personam to recover indemnity, the language in the opinion is pertinent here. Say the court in part: "if it [the accident] could in any manner be attributed to the negligence of the mate in improvidently hastening the work, the shipowner would not be liable therefor in a suit to indemnify the seaman for the injury. * * *" One claim made was that the master ordered the seaman to hasten in his work in sewing on a piece on an old sail. In Roebling's Sons Co. v. Erickson, supra, the plaintiff claimed the master directed the method of discharging logs, as a result of which the injuries in question were sustained, and that the vessel was unseaworthy because of the defective and unsafe stick selected by the master. The court held the owners were not liable, and said in part: "There would, however, be little security for careful owners if, after furnishing a seaworthy ship and proper appliances, they were still liable for the act of the master in not using the proper appliances furnished, or in using them for purposes for which they were not furnished."

Chelentis v. Luckenbach S. S. Co., supra, arose subsequent to 1915 and prior to 1920. In that case the plaintiff claimed that he sustained injuries through the negligence of an improvident order of a superior officer. He sought to recover indemnity damages. Referring to section 20 of the Seamen's Act of 1915, the court said that it "was not intended to substitute the common-law measure of liability for the maritime rule in such cases. * * * The language of the section discloses no intention to impose upon shipowners the same measure of liability for injuries suffered by the crew while at sea as the common law prescribes for employers in respect of their employees on shore. * * *" The opinion quotes with approval The Osceola, supra, decided prior to 1915. Following this decision it would seem to be immaterial whether the act of 1915 survived the act of 1920.

In Engel v. Davenport, 271 U. S. 34, 46 S. Ct. 410, 411, 70 L. Ed. 813, cited by libelant, an action in law under the new rules, based upon negligence, it was said that section 33 of the act of 1920 grants seamen "as an alternative, the common law remedy of an action * * * which * * * may be

enforced through appropriate proceedings in personam on the common law side of the courts."

The Imperator (C. C. A.) 288 F. 372, cited by libelant, following the rule laid down in The Osceola, supra, as to the liability of the vessel to an indemnity for injuries received by a seaman, is authority for the proposition that the unseaworthiness of the vessel or its equipment is a question of fact to be decided on the trial. In Valdarno (C. C. A.) 11 F.(2d) 35, an action in rem, the libelant was injured through falling down a hatch. It appeared that the hatch was improperly covered. The court held that the owners of the ship failed to provide proper appliances or equipment. The Jethou (D. C.) 2 F.(2d) 286, is quite similar in its legal phases to The Valdarno, supra.

Globe Steamship Co. v. Moss (C. C. A.) 245 F. 54; International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157; The Pontin Bros. (C. C. A.) 47 F.(2d) 595; The Themistocles (C. C. A.) 235 F. 81, cited by libelant, are none of them, in my opinion, authorities for libelant's contention that, where the action is in rem against the vessel, the seaman may recover for injuries arising from act of negligence of the master, where the vessel is seaworthy and provided with proper equipment.

Leary Construction Co. v. Matson (C. C. A.) 272 F. 461, citing The Baron Napier (C. C. A.) 249 F. 126, and The Colusa (C. C. A.) 248 F. 21, attempts to make a distinction between orders given by the master and the selection of appliances by him. Each of these cases arose prior to the enactment of section 33, and, in so far as they are claimed to be authorities for the proposition advanced in this libel, it seems to me they are in conflict with The Pinar del Rio, Roebling's Sons Co. v. Erickson, and other cases hereinbefore cited. None of the three cases first mentioned have been cited on the point involved here, except that the latter two cases were cited in the first of these.

Whether libelant sustained injuries by the mate's selection of an improper rope or by the use of such rope under the direction of the master makes no difference, since the rule of law, as I construe it, is the same as regards the liability of the vessel for the acts of either.

I find, therefore, that the vessel is not liable for any negligent act of the master or mate in the selection or the direction as to the use of the hauling rope in question. I am satisfied from the proofs in this case that the

libelant sustained some injury on the occasion in question. It is claimed that the injury resulted in a condition of anesthesia in both legs below the knee, and that this condition is permanent. Considerable medical testimony has been offered both to show that libelant's present condition is due to the injury and in denial of this. My conclusion that the vessel is not liable for indemnity damages makes it unnecessary to pass on the question of the permanency of libelant's condition or even his present condition.

Considerable testimony has been given tending to show that the injury, if any, was of minor significance. It is claimed that libelant made no complaint of injuries to the master at the time it is alleged that they were caused; that he did not apply for relief, as he was authorized to do; that he was observed to be about in his usual condition, and that a medical examination disclosed no results of an injury. This, and other testimony directed to the same purpose, bear on the question of the extent of the injury. It is not inconsistent with the finding that there was some injury.

While libelant does not specifically ask for "maintenance and cure," he does ask that he be given such relief as he is entitled to receive under the old rule, and under the old rules he may be entitled to "maintenance and cure," though not entitled to indemnity damages. The cases uniformly support this statement. "Maintenance and Cure," as construed and applied by the text-writers and courts, comprehend sustenance and care for a reasonable period of time following the injury. What amounts to or constitutes a reasonable period depends upon the condition in each individual case. Bender on Admiralty (5th Ed.) § 93; Desty on Shipping and Admiralty, § 154; The Bouker No. 2 (C. C. A.) 241 F. 831; The Florence A (D. C.) 46 F.(2d) 139; Whitney v. Olsen (C. C. A.) 108 F. 292; The Osceola, supra; Pacific Steamship Co. v. Peterson, supra. Such period does not necessarily end with wages or the voyage.

I hold that the libelant in this case is entitled to recover maintenance and cure. Any award for maintenance and cure, however, must be based on the amount expended or the liability incurred for maintenance and cure. The only evidence showing such expenditure or liability is the evidence of two doctor's bills aggregating $280 and a hospital bill of $240, making a total of $520.

The record is barren of any other expenses paid or incurred.

While the aforesaid expense of $520 was incurred a considerable time after the alleged injury, it seems to me, under the facts in this case, that it comes within a reasonable time thereafter.

I accordingly find that the libelant is entitled to recover $520 on account of maintenance and cure, reserving, however, to the libelant, if so advised, the right to make further proof of expenditures or liabilities incurred for maintenance and cure.

Judgment may be entered accordingly.