## THE HAWAIIAN.
### No. 2372.

District Court, D. Maryland.
July 5, 1940.

Sol C. Berenholtz, of Baltimore, Md., for libelant.

Henry L. Wortche, of Baltimore, Md., for respondent.

COLEMAN, District Judge.

This is a libel brought to recover wages to the end of a coast-to-coast voyage and transportation back to the point where the voyage started, namely, San Francisco, based on the ground that the libellant became ill while in the service of the ship, and that he is therefore entitled to recover to the above extent. The vessel owner, the respondent, the American Hawaiian Steamship Company, has resisted payment of the claim on the ground that the libellant did not become ill while in the service of the ship but that his illness for which he left the vessel existed long prior to his employment

thereon, it being an arthritic or rheumatic condition of one of his knees and other limbs. The respondent also denies liability for transportation charges on the ground that the circumstances do not impose any legal obligation upon the company to bear this expense.

There is little dispute as to the facts in the case, and it is conceded by both sides that the case is not covered by any Federal statute, but is to be governed by general admiralty law. The libelant signed articles for a round trip from San Francisco to Atlantic ports and return as a messman on the Hawaiian. On or about the 31st of August, when the ship was at sea, the libellant complained of a swelling in his right knee, for which he was treated. When the vessel arrived at Savannah, Georgia, on September 12, he went to the Marine Hospital there, where he received treatment, remaining until October 18, 1939, when he was discharged as cured, or at least cured so far as it was believed possible to cure his chronic ailment. The voyage for which he had signed ended at San Francisco on October 18, 1939, at which time the crew was paid off for the voyage and discharged. Since this date coincides with the date when libellant was discharged from the Savannah Hospital, no question as to maintenance and cure, as such is involved in this case, but merely the question, first, as to libellant's right to the additional wages,—for something less than one month; and, second, for transportation cost back to San Francisco.

█ The libellant has been paid his wages up to and including September 12th, the date he left the vessel. The question of the additional wages is to be governed by the same principle as the question of maintenance and cure. See The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; and whatever may have been the law in this country prior to the Supreme Court's decision on March 28, 1938, in Calmar Steamship Co. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, there is no longer room for argument, as a result of that decision, as to the duty of the vessel to provide maintenance and cure, and, therefore, to pay the full wages to the end of the voyage, even in cases where the injury or illness of the seaman is not in any way connected with his employment.

That was a suit brought by a seaman suffering from so-called Buerger's disease, an incurable malady of the veins and ar-teries, which manifested itself during his employment, but was not caused thereby. The Supreme Court held that the seaman was entitled to recover, not an award of a lump sum, however, in anticipation of a continuing need of maintenance and cure for life, based on his life expectancy, but that his recovery must be measured by the reasonable cost of such maintenance and cure as he was entitled to at the time of the trial, including, in the discretion of the Court, such amounts as might be needful in the immediate future for the maintenance and cure of a kind and for a period which could be definitely ascertained. The Court said, 303 U.S. at pages 527, 528, 529, 530, 58 S.Ct. at page 653, 82 L.Ed. 993:

"The ancient duty of a vessel and her owner to provide maintenance and cure for seamen injured or falling ill while in service was recognized and, to some extent, defined by this Court in The Osceola, 189 U. S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. See, also, Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Pacific S. S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220. The duty, which arises from the contract of employment, Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368, does not rest upon negligence or culpability on the part of the owner or master, Id.; The City of Alexandria, D.C., 17 F. 390; The Mars, 3 Cir., 149 F. 729, 731; Sorensen v. Alaska S. S. Co., D.C., 243 F. 280, affirmed, 9 Cir., 247 F. 294; Brown v. The Bradish Johnson, C.C., Fed.Cas. No. 1,992, 1 Woods 301, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness, The Wensleydale, D.C., 41 F. 829; The Bouker No. 2, 2 Cir., 241 F. 831.

*  *  *  *  *  *

"The practical inconvenience and the attendant danger to seamen in the application of a rule which would encourage the attempt by master or owner to determine in advance of any maintenance and cure, whether the illness was caused by the employment, are manifest."

I, therefore, find that decision to be controlling on this Court on the question of additional wages, or wages to the end of the voyage, and, therefore, find that libellant is entitled to same.

█ Reference has been made by counsel for respondent to the case of Miller v. Lykes Bros.-Ripley S. S. Co., 98 F.2d 185, a decision of the Circuit Court of Appeals

of the Fifth Circuit, and it is urged that that case, which was decided in July, 1938—that is, since the Calmar case just referred to—is to be taken as a modification of the broad rule of the Calmar case, and therefore favorable to the respondent here. I am unwilling to accept that view. The Miller case does not refer to the Calmar case and, without attempting to determine whether it is in fact at variance with anything said in the Calmar case, that case must, of course, control this Court.

■■■ Coming then to the next and final question, namely, as to the right of the present libellant to be awarded the cost of transportation or to be afforded transportation back from the Atlantic seaboard on one of the Company's vessels, either one of which the libellant has expressed a willingness to accept, I reach the conclusion that on this point also the libellant is entitled to a favorable decision. This question, like the one just considered, is admittedly not controlled by any statute and there is apparently a paucity of reported cases covering the precise point. At first blush, it may appear to be reasonable to say that the libellant,· being a person' who, when he was discharged, sought and obtained other employment and is able-bodied, should be treated as having made an election not to return to the home port. I think if there is definite evidence of an election, that is, evidence of an intention to do something which is directly contradictory of a claim for transportation back to the home port, then the seaman is not entitled to such transportation. If this were not true, it would be possible for a seaman, years after leaving his vessel, to claim transportation for various reasons. In the interim he may have had perfect health and continuous gainful employment, and may have given every evidence that he had in fact abandoned any idea of making any claim against th'e vessel for the return trip to the original port where he signed on, and then, suddenly, he might determine that this would be a good way to get back to that place free of cost to himself. So, without any hesitation, I have reached the conclusion that transportation should not be allowed in any case where the conduct of the seaman belies the necessity for, or the reasonableness of allowing such transportation. In the present case the libellant has testified that before making, for the first time, any demand upon the vessel for transportation, which was done on November 22, 1939, by letter of his counsel, he had obtained work on another vessel on the Atlantic Coast, but that was merely for a short trip, and he has further testified that he was out of employment at ·the time that his counsel made this request, which was somewhat more than a month after he had been discharged from the hospital as fit to return to work.

Under all of these circumstances, I think it is reasonable to say that the libellant had not made an election to remain on the Atlantic seaboard, although he appears to have as much, if not more, of an attachment, in so far as domicile is concerned, to Baltimore than he has ever had to San Francisco or any other place on the West Coast, but I believe it is reasonable under all the circumstances to treat his status as not being contradictory of his claim to the right to get back to the West Coast free of charge to himself. This is supported by the fact that there apparently has been no undue delay in filing the libel in the present case in which the transportation ·claim is made, the libel having been filed December 1, 1939, which is shortly after libellant's first request for transportation was made through his counsel.

■■■ To say, as respondent's counsel suggest, that a seaman in every· case of this kind must first show that he has actually incurred the expense of the particular transportation would, I think, be an unreasonable rule, because the basic theory of allowing such claim is because the seaman is without funds and presumably cannot get back to the original port unless he is given funds in advance. It is true that most, if not all, of the cases to which the Court has been referred indicate that the seaman was merely reimbursed for out-of-pocket transportation expenses, but I do not think that the rule is or need be actually that· hard. I think the sound rule summarized is this: The seaman is entitled to be transported free of charge back to the port where he originally signed on, provided he makes the demand for such transportation within a reasonable time after he has recovered his health, and provided also that at the time he makes his demand he has not assumed a position which is directly contradictory of his asserted desire to seek employment at that port.

For the reasons just given, while this case may be said to be a close one, I think that the above conditions have been satis-

factorily met. See The William Penn,[1] The Mariner;[1] and Robinson v. Swayne & Hoyt (The Point Clear), D.C., 33 F.Supp. 93.

Therefore, I find that the libellant is entitled to be afforded within a reasonable time from the decree herein, namely, a week or ten days, free transportation which he has claimed, but in so finding, I do not mean to say that he has the right to demand cash or the equivalent in railroad fare to San Francisco from Baltimore, if the respondent within such time proffers him transportation and, of course, maintenance in the course of transportation, on one of its vessels from Baltimore to San Francisco. If such is so proffered, and not accepted within a like period of time, then the Company will have discharged sufficiently its obligation in this respect.

I will sign a decree in accordance with this opinion.

[1] No opinion for publication.